GORDON GROSSMAN BUILDING COMPANY *v.* ELLIOTT.

OPINION OF THE COURT.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FAILURE TO RAISE A QUESTION.

Failure to raise a question in the trial court or Court of Appeals generally precludes the Supreme Court from considering it on appeal.

2. VENDOR AND PURCHASER—LAND CONTRACT—FORECLOSURE—REDEMPTION.

The vendee of a land contract which has been foreclosed has 3 months from the time of sale to redeem the entire premises by paying purchaser, his executor, administrator, or assigns, or the register of deeds for benefit of purchaser, the sum bid at the sale plus interest from the time of sale at the rate per cent borne by the land contract (MCLA § 600.3140).

3. SAME—FORECLOSURE—REDEMPTION—STATUTES.

The Court must follow the clear and plain meaning of the statute pertaining to redemption from foreclosure of a land contract in the absence of any unusual circumstance or additional consideration not within the ambit of the statute (MCLA § 600.3140).

4. SAME—FORECLOSURE—REDEMPTION—FRAUD—EQUITY.

Fraud is frequently addressed to the conscience of the court as an exception to the general rule that a right to redeem under

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.
[2–9] 55 Am Jur, Vendor and Purchaser § 461.
  Redemption rights of vendee defaulting under executory land sale contract after foreclosure sale or foreclosure decree enforcing vendor's lien or rights, 51 ALR2d 672.
[4] 55 Am Jur, Vendor and Purchaser § 642.

the foreclosure statute is a legal right which can neither be enlarged nor abridged by the courts; however, to succeed as an equitable defense, fraud must be proved by clear and convincing evidence; hence, where the parties' attorneys come to an impasse in negotiations for redemption but no fraud is shown from the record and defendant admits the issue of fraud was never a part of his case, there is no act of fraud which would justify the intervention of equity (MCLA § 600.3140).

5. SAME—FORECLOSURE—RIGHT OF REDEMPTION—INACTION—RELIN-QUISHMENT.

The right of redemption from foreclosure is intentionally relinquished where defendant was aware a week before expiration of the redemption period that unless one of the statutory methods of redemption was followed, the right to redemption would expire, and defendant did nothing to preserve the right of redemption (MCLA § 600.3140).

DISSENTING OPINION.

KELLY AND ADAMS, JJ.

6. VENDOR AND PURCHASER—LAND CONTRACT—REDEMPTION—STAT-UTES.

*The vendee of a land contract or a person lawfully claiming from him may redeem the entire premises sold on foreclosure within 3 months of sale by paying the purchaser or his successor in interest or the register of deeds the sum which was bid with interest from the time of the sale, and after payment the deed of sale is void (MCLA § 600.3140).*

7. SAME—MORTGAGE—FORECLOSURE—REDEMPTION—LAND CONTRACT—LEGAL TITLE—EQUITABLE TITLE.

*Foreclosure and redemption of a mortgage causes the legal and equitable title to the property to be restored to the mortgagor, but upon foreclosure and redemption of a land contract the vendee's equitable title is extinguished by foreclosure proceedings and upon redemption by a vendee the deed to purchaser at the foreclosure sale would be void, but the legal title to the property would still stand in the name of the vendor whose foreclosure action has extinguished the land contract, resulting in the equitable title of vendee becoming merged with the legal title of the vendor (MCLA § 600.3140).*

8. SAME—LAND CONTRACT—FORECLOSURE—REDEMPTION—WARRANTY
DEED—EQUITY.

> *Agreement as to method of redeeming property sold on a land contract and subsequently foreclosed is established where vendees' attorney's statement, that a procedure for redemption of the land was agreed upon in a telephone conversation with vendor's attorney, is substantiated by a letter from vendees' attorney to vendor's attorney, dated the same day as the telephone conversation, and by a warranty deed prepared by vendees' attorney and forwarded to vendor's attorney for execution by vendor, where vendor's attorney did not immediately repudiate or deny the agreement reached by telephone conversation when he received the letter of confirmation and warranty deed to be executed; thus, in equity, vendor must execute a warranty deed to the vendee.*

9. SAME—REDEMPTION—EQUITY—JURISDICTION—SPECIFIC PERFORM-
ANCE OF AGREEMENT TO EXECUTE DEED.

> *Vendees' motion to compel vendor to execute warranty deed, filed subsequent to expiration of period of redemption from foreclosure sale, pursuant to agreement between attorneys for the respective parties which had been entered into prior to expiration of period of redemption, is treated as a proceeding in chancery in which the circuit judge had jurisdiction to enforce the agreement (MCLA § 600.3140).*

See Headnote 1.

Appeal from Court of Appeals, Division 2, J. H. Gillis, P. J., and Fitzgerald and McGregor, JJ., affirming St. Clair, Streeter (Halford I.), J. Submitted May 7, 1969. (Calendar No. 16, Docket No. 52,086.) Decided November 3, 1969.

11 Mich App 620, reversed.

Complaint by Gordon Grossman Building Company, a Michigan corporation, against Jeannine Elliott and John F. Elliott for foreclosure of a land contract. Judgment of foreclosure rendered and foreclosure sale held. Motion by defendant Jeannine Elliott for order requiring plaintiff to execute

a deed in compliance with the terms of contract. Motion granted.   Plaintiff appealed to the Court of Appeals.  Affirmed.  Plaintiff appeals.  Reversed and remanded.

*Hertzberg, Jacob, Weingarten & Kennedy (Peter A. Nathan,* of counsel), for plaintiff.

*McIntosh, Simpson, Oppliger & Mugan,* for defendant.

T. M. Kavanagh, J.  On May 26, 1959, plaintiff-appellant Gordon Grossman Building Company, as vendor, entered into a land contract with defendants Jeannine Elliott and her husband, John Elliott, as vendees, covering a house and lot in the township of Burtchville, St. Clair county, Michigan, for the sale price of $11,750.  Defendants defaulted in payments and plaintiff instituted foreclosure of the land contract in circuit court.  A judgment of foreclosure was entered on November 10, 1966, finding a balance of $8,591.63 due on the land contract plus costs to be taxed and ordering the property to be sold by a circuit court commissioner.  The property was sold to plaintiff on December 30, 1966, and the sale was confirmed by the trial court on February 3, 1967.  No appeal was taken from this order.  The statutory period for redemption expired on March 30, 1967.

On March 16, 1967, Mrs. Elliott's attorneys wrote to plaintiff's attorneys stating:

"Confirming our telephone conversation of March 16, 1967 we are forwarding to you a warranty deed to be executed by the proper representative of the Grossman Company.  As you know, the Elliotts have found a purchaser for the property and the Michigan National Bank has approved the loan.

"However, we will need the deed from Grossman to Elliott in order to consummate this transaction. We have received a title commitment from the local title company indicating that there is a balance due on a mortgage at Citizens Federal Savings & Loan Association of Port Huron, wherein the Grossman Company is the mortgagor.

"With a copy of this letter I am requesting Mr. George LeVine [sic] of the Michigan National Bank to confirm, by letter, that they have approved a loan for the purchasers, Mr. and Mrs. Robert A. Ritz, and that they will forward to you for your client the balance owing as a result of the foreclosure sale. Pursuant to your letter of March 9, 1967 the total amount due for redemption as of March 10, 1967 is $9,299.91 with $1.51 in interest due per day after that date.

"Please forward the executed deed directly to Mr. LeVine [sic] at the bank with directions that he be authorized to pay the balance directly to Citizens to discharge the mortgage and to remit the balance to you for your client. Mr. LeVine [sic] will not deliver the deed until such time as he makes disbursement to you and Citizens.

"I would appreciate it if you would expedite this matter, as you know, the redemption is drawing near. Please advise if there are any problems concerning this matter."

On March 21, 1967, the mortgage department of the Michigan National Bank wrote a letter to plaintiff's attorneys stating:

"In response to your letter from McIntosh, Simpson, Oppliger and Mugan of March 16th, 1967, this is to confirm that the Michigan National Bank has approved the loan to Mr. and Mrs. Robert A. Ritz to purchase the John and Jeannine Elliott property located at 3293 Blue Water Drive, Port Huron, Michigan."

On March 23, 1967, Mr. Jacob, one of the attorneys for plaintiff Grossman Building Company advised defendant Jeannine Elliott's attorneys as follows: "Our clients are not going to send you the deed. Mr. Nathan never said they would. As far as we are concerned, that's it."

On April 7, 1967, after the period of redemption had expired, Mrs. Elliott filed a motion in circuit court seeking an order requiring plaintiff to execute a warranty deed and to comply with all of the terms of the contract. She sought to require plaintiff to deliver to her a complete abstract of title and tax history certified to date of conveyance.

Plaintiff answered, saying it was not required to place the deed in escrow after expiration of the redemption period.

On April 17, 1967, the trial court entered an order providing in part:

"It is hereby ordered that the plaintiff  *  *  * execute a valid warranty deed in fulfillment of the terms of a certain land contract dated May 26, 1959, and that said plaintiff comply with all terms of said contract, including the provisions contained in paragraph No. 7 in said contract.

"It is further ordered that said plaintiff execute said deed and comply with all provisions forthwith."

Plaintiff appealed to the Court of Appeals. The order of the trial court was affirmed in a unanimous opinion. 11 Mich App 620. Leave to appeal to this Court was granted plaintiff on September 3, 1968. 381 Mich 773.

The two issues in this Court are:

(1) Was the trial court's order requiring the vendor to execute a warranty deed improper?

(2) Were the foreclosure proceedings void because of an improper description in the circuit court

commissioner's notice of sale, deed, and report of sale?

Disposing of the latter issue, the record discloses the issue was never raised or passed upon by the trial court or the Court of Appeals. The failure to raise a question in the lower court precludes, as a general rule, the Supreme Court considering it on appeal. See *Young* v. *Morrall* (1960), 359 Mich 180, 187, and cases therein cited. See, also, *Krautmer* v. *Kinsella* (1963), 369 Mich 98, 100; *Therrian* v. *General Laboratories, Inc.* (1964), 372 Mich 487, 490; *Magreta* v. *Ambassador Steel Co.* (On Rehearing, 1968), 380 Mich 513, 519.

Turning to the only issue really before this Court, we recognize the statute[1] pertaining to redemption from foreclosure, which reads in part:

"The vendee of a land contract, his heirs, executors, administrators, or any person lawfully claiming from or under him or them may redeem the entire premises sold within 3 months from the time of the sale *by paying to the purchaser, his executors, administrators, or assigns or to the register of deeds in whose office the deed of sale is deposited as provided in the court rules, for the benefit of the purchaser, the sum which was bid with interest from the time of the sale at the rate per cent borne by the land contract.* In case the sum is paid to the register of deeds the sum of $5.00 shall be paid to him as a fee for the care and custody of the redemption money. After these sums have been paid the deed of sale is void and of no effect, but in case any distinct lot or parcel separately sold is redeemed, leav-

[1] PA 1961, No 236, § 3140, effective January 1, 1963, as amended by PA 1963, No 240 (MCLA § 600.3140 [Stat Ann 1969 Cum Supp § 27A.3140]). Note that to a large extent this statute eliminated the legal distinction between foreclosure of a mortgage and foreclosure of a land contract, and the authorities hereinafter cited will be treated as equally applicable to both. See Committee Comment, MCLA § 600.3101, pp 48, 49, Stat Ann 1962 Rev § 27A.3101, pp 259, 260.

ing a portion of the premises unredeemed, then the deed of sale is inoperative merely as to the portion or portions of the premises which are redeemed, and to the portions not redeemed it remains valid and of full effect." (Emphasis added.)

The period of redemption is specifically set at 3 months and the procedure to properly effect redemption within this period is clearly spelled out. Absent some unusual circumstances or additional considerations not within the ambit of the statute, this Court must follow the clear and plain meaning of the statute.

We accept as a general rule that the right to redeem under present statutes is a legal right and can neither be enlarged nor abridged by the courts. See *Detroit Trust Co.* v. *George* (1933), 262 Mich 362; *Drysdale* v. *P. J. Christy Land Co.* (1929), 248 Mich 184.

In *Wood* v. *Button* (1919), 205 Mich 692, this Court, holding that a mortgagor redeeming within the statutory period was not required to reimburse the purchaser at the foreclosure sale for taxes paid, stated (p 703):

"In my opinion, the case presented is not one to be determined upon some notion of general equities. The parties have a right to stand upon the law. *Carlisle* v. *Dunlap* (1918), 203 Mich 602. *The right to redeem from a foreclosure at law is a legal right, is created by the statute, and can neither be enlarged nor abridged by courts. A redemption is complete when one having the right to redeem pays in proper time, to a proper person.*" (Emphasis added.)

Any departure from this general rule must be addressed to the conscience of the court, which under prior statutes and prior practice was in the nature of a bill in equity. See *McCreery* v. *Roff* (1915), 189 Mich 558. The usual ground urged as an ex-

ception to the general rule, justifying the intervention of the court of equity, is that of fraud. See *Palmer* v. *Palmer* (1916), 194 Mich 79. The element of fraud, however, must be proven by clear and convincing proofs.

In *Marble* v. *Butler* (1930), 249 Mich 276, the plaintiff, having paid over 90% of the land contract obligation, attempted to redeem by securing a mortgage to pay the entire balance due and tendered the full sum to the purchaser, and upon the latter's refusal deposited the amount due with the clerk of the court. The Court in *Marble* noted, as further unusual circumstances, that one of the original land contract vendees refused to join in executing the mortgage and that defendant-purchaser refused to disclose the amount still due and refused to provide an abstract of the property. Reversing the lower court, which dismissed plaintiff's bill in equity—filed on the last day of redemption and praying that the court compel the land contract vendee to join in executing the mortgage—this court in *Marble* stated (pp 279, 280):

"This court has frequently relieved a person from a harsh forfeiture where he is *ready and willing to make full payment,* and where there are *very unusual circumstances* which appeal to the conscience of the court, and where *the party seeking to enforce the forfeiture will receive everything to which he would have been entitled* under his contract had there been no forfeiture. This right to redeem, as is sought in the amended or supplemental bill of complaint, rests in the sound discretion of the court." (Emphasis added.)

In *Palmer* v. *Palmer, supra,* the facts of the case compelled this Court to reach the opposite conclusion. There the plaintiff-wife alleged that defendant-purchaser and defendant-husband, who was

a defaulting mortgagor, conspired to prevent her from redeeming by practicing fraud and dilatory tactics. This Court, reviewing her proofs, stated (pp 80, 81):

"The authorities seem to justify the conclusion that, where the owner has been induced to refrain from redeeming by fraudulent conduct and representations, equity will interpose and grant relief. See 27 Cyc, p 1847; 2 Jones on Mortgages (7th ed), p 649; *Newman* v. *Locke* (1887), 66 Mich 27. This is of that class of cases where it can be said that it is indeed regrettable that because of her failure to act the plaintiff has been deprived of property by reason of the statutory enactments with reference to such a foreclosure. It is elementary, however, that before a court of equity is justified in interfering equitable grounds must clearly appear, and fraud is not to be lightly presumed, but must be clearly proved.

"A careful examination of this record is convincing that the plaintiff has failed in her proof to sustain her charge."

The defendant in the instant case would have us view her pleaded facts and circumstances as falling within the decision in *Marble, supra*. But we cannot find in the record before us a single statement which alleges that plaintiff practiced any fraud. In fact, defendant in oral argument before this Court candidly admitted that the issue of fraud "never was a part of this case nor was it being argued before this Court."

Granting defendant every presumption of integrity and good faith, the only view we can take of the facts of this case is that the negotiations between the parties' attorneys came to an impasse. However, this situation does not amount to an act of fraud which would justify the intervention of equity. See, *e.g., Kaiser* v. *Weber* (1942), 301 Mich 609. To

hold otherwise would set a dangerous precedent which would deprive every title to real estate purchased at foreclosure sale of the finality and security clearly intended under the statute.[2]

We note, in addition, that defendant was fully aware at least one week before the expiration of the redemption period, that unless she followed one of the statutory methods of redemption her property would be lost. Yet she did nothing to preserve her right of redemption until after it had expired. Concluding that defendant intentionally relinquished her right of redemption, we adhere, regrettable as it may be, to the precedential authority and reasoning of this Court in *Pappas* v. *Harrah* (1922), 221 Mich 460, where it was stated (p 463):

"The record falls short of establishing any agreement or assurance justifying plaintiffs in paying no further attention to the period of redemption. With the suits determined against them and the right of redemption about to expire, the plaintiffs should have tendered the amounts due on the contracts. The failure to make such tender is not excused by the assumption that defendant would not insist on his strict rights. We would import into the law an unsafe and litigious element if we should hold an offer to perform, with ability to do so, accomplishes the purpose of a tender, or constitutes ground for equitable relief."

To summarize, we can find no element of fraud in this case which would justify the equitable relief granted by the trial court in the instant case. *Palmer* v. *Palmer, supra.* Absent equitable considerations, the plain intent and operation of the statute must be literally followed. *Union Trust Co.* v.

2 PA 1961, No 236, § 3130, effective January 1, 1963 (MCLA § 600.3130 [Stat Ann 1962 Rev § 27A.3130]).

*Detroit Trust Co.* (1928), 243 Mich 451; *Pappas* v. *Harrah, supra.*

In view of the above, we do not discuss the question of tender relied upon by the Court of Appeals.

The decision of the Court of Appeals and the judgment of the trial court are reversed and the cause remanded to the trial court for entry of an order of dismissal. Plaintiff-appellant shall have costs of this Court.

T. E. BRENNAN, C. J., and DETHMERS and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.

ADAMS, J. (*dissenting*). The statute we are concerned with in this case (MCLA § 600.3140 [Stat Ann 1969 Cum Supp § 27A.3140]), reads in part as follows:

"The vendee of a land contract, his heirs, executors, administrators, or any person lawfully claiming from or under him or them *may redeem the entire premises* sold within 3 months from the time of the sale *by paying to the purchaser,* his executors, administrators, or assigns or to the register of deeds in whose office the deed of sale is deposited as provided in the court rules, for the benefit of the purchaser, *the sum which was bid with interest from the time of the sale* at the rate per cent borne by the land contract.  *  *  *  After these sums have been paid the deed of sale is void and of no effect, but in case any distinct lot or parcel separately sold is redeemed, leaving a portion of the premises unredeemed, then the deed of sale is inoperative merely as to the portion or portions of the premises which are redeemed, and to the portions not redeemed it remains valid and of full effect." (Emphasis added.)

The statute provides two methods of redemption— (1) "by paying to the purchaser  *  *  * ," or (2) by paying "to the register of deeds." The statute

first deals with redemption upon foreclosure of a
mortgage and then proceeds with the above quoted
provision pertaining to redemption of a land con-
tract foreclosure. The statute then attempts to deal
with the status of the legal title to the property
upon redemption by providing that the deed of sale
is void and of no effect. The consequence of this
provision, upon foreclosure and redemption of a
mortgage, would be to restore the legal and equitable
title to the property back to the mortgagor. How-
ever, the vendee under a land contract, is not in the
same position as a mortgagor. A vendee has only
an equitable title which is extinguished by virtue of
the foreclosure proceedings. Under the above pro-
vision of the statute, upon redemption by a vendee,
the deed to the purchaser at the foreclosure sale
would be void but the legal title to the property
would still stand in the name of the vendor whose
foreclosure action has extinguished the land con-
tract resulting in the equitable title of the vendee
becoming merged with the legal title of the vendor.
This strange result comes about because the legis-
lature failed to enact separate legislation for land
contract foreclosures.

As will be seen hereinafter, the attorneys for the
parties were fully cognizant of the problem pre-
sented by the statute and attempted to deal with it
in their negotiations.

At the hearing held on April 17, 1967 before the
circuit judge on defendants' motion to compel plain-
tiff to execute a deed, the following colloquy took
place:

"*The Court:* Did you have any telephone calls
with the attorneys?

"*Mr. Mugan:* Yes. On March 16th with Mr.
Nathan, who is in the courtroom, and on March 23d
with Mr. Jacob, one of his partners.

"On March 16th, I informed Mr. Nathan of the entire transaction, and followed it up with a letter of March 16th which I would like to read into the record. [See Justice T. M. KAVANAGH's opinion for the letter, pp 599, 600.]

"After this letter of March 16th confirming our telephone conversation of March 16th we had no word from the attorneys until Mrs. Elliott contacted me and said they were anxious because the March 30th date was approaching.

*"The Court:* Did you explain it to them in the telephone conversation prior to this letter?

*"Mr. Mugan:* Yes, I explained to Mr. Nathan exactly the contents of the letter.

*"The Court:* What did he say?

*"Mr. Mugan:* He said, 'Send the deed down and we will get it executed.' He did not definitely say he would send it back but, to the effect, 'I don't see any problem.' "

At the conclusion of the hearing on April 17, 1967, the circuit judge observed:

"Everybody knows common business practice. I think it would be fraudulent to let that go on. The court does not favor forfeitures, and it is the first time in my experience of 34 years I have ever heard of anybody refusing to forward a deed to a bank when they have the money available. It looks to me like a case of bad faith."

Upon oral argument before this Court, attorneys Nathan and Mugan were given an opportunity to state their versions of the conversation of March 16. While we do not as a usual rule quote oral argument in opinions of this Court since, in effect, the attorneys who engaged in this matter were allowed to make professional statements to this Court as to what took place, the following pertinent excerpts from the oral argument are set forth:

"*Mr. Nathan:* My name is Peter Nathan. I represent Gordon Grossman Building Company, which is the plaintiff and appellant in this cause.

"On March 20, 1967, 10 days prior to the expiration of the statutory period of redemption, the plaintiff's attorney, being myself, received a letter from the appellee's attorney, whereby the appellee's attorney stated that the appellee had found a purchaser for the premises and requested the appellant to execute a warranty deed and put it into escrow with the Michigan National Bank.

"*From The Bench:* Let me ask you a question with reference to that letter. Noting the first paragraph, first sentence, in it indicates: 'Confirming our telephone conversation of March 16, we are forwarding you a warranty deed.' Had he had a telephone conversation with you and had there been an agreement between you in regard to it?

"*Mr. Nathan:* Your Honor, we had had a telephone conversation. We had discussed, I think, a previous letter where I had advised him of the amount necessary to pay off the land contract. I told them at that time, and I believe in the conversation of March 16, that if he would tender the funds, we would submit a deed. I had told them at that time that I did not think a deed was necessary but I understand the problem of the way the foreclosure statute for land contracts, the redemption statute, raised a problem which I will discuss, and I told him that if he tendered the funds I would submit a deed although I did not think it was necessary. He then sent the letter which I received on March 20 and the letter did not have any funds in it. It just asked me to execute a deed and send it to the Michigan National Bank.

"*From The Bench:* You didn't have any agreement, there then, about putting the deed in trust or anything of that kind?

"*A.* No, sir.

"*From The Bench:* And you told him that if he would send the funds, only if he would send the funds, that you would forward the deed?

"*A.* That is right.

"*From The Bench:* Mr. Nathan, did you not know from your conversation that the attorney for the Elliotts expected to handle the matter this way, that he proposed to handle it?

"*A.* No, he had just said that they had found a purchaser.

"*From The Bench:* Well, but he says: 'Confirming our telephone conversation, we are forwarding you a warranty deed to be executed by the proper representative of the Grossman Company.' What conversation did you have about that?

"*A.* As I remember, we had a conversation—I had sent him a letter previously stating the amount necessary to redeem it. He had called me and stated that he had a purchaser and he wanted me to have a deed prepared so that—maybe at this point I can raise the one problem here. On a foreclosure of a land contract,—as in the redemption of a land contract, as in the redemption of a mortgage foreclosure, the commissioner's deed is voided and the register of deeds makes a note in the chain of title in the grantor-grantee index that there has been a redemption. In the mortgage cases, there is no problem because when the deed—the commissioner's deed or sheriff's deed is voided, then the title appears in the mortgagor who has redeemed. In the land contract situation, the title is in the vendor and the vendee is the party who is redeeming and when the note is made in the register of deeds, the title appears to be back in the vendor. This, I think, was the confusion of both by counsel representing—

"*From The Bench:* That is exactly why there has to be a deed.

"*A.* Well, no, Your Honor, that is one of our arguments. Our argument is that the notation by the register of deeds is sufficient, and if you look at the historical bases for a—

"*From The Bench:* Excuse me, Mr. Nathan, let me interrupt you, if I may. I am interested in— now you say that you were confused and counsel for the other side was confused about the mechanics. Did you discuss this confusion, in this conversation?

"*A.* I believe we did, Your Honor.

"*From The Bench:* All right. And did you not understand that the mechanics that were suggested, namely, that a deed would be executed by your people and sent to the bank, and all this business, the purchaser, whatever the rest of the letter, did you not understand in this conversation that these were the mechanics that were proposed to handle this closing?

"*A.* I don't believe I did, Your Honor, because I told them at that time that I would only give a deed when we received the funds as stated in my previous letter.

"*From The Bench:* Yes, but now how were you going to receive the funds according to the conversation that you had?

"*A.* Well, the best way, I think, would have been to have a closing meeting like you would in any other situation. But I would not put a deed into escrow. I think, as the Court of Appeals says, the normal business exigencies are to put a deed in escrow. I don't think that is right. I haven't been practicing law that long. But in the 3 years that I have been practicing law and the numerous,— maybe a hundred transactions that I have handled in the real estate field, I have never put a deed into escrow prior to closing. We would have a meeting at the closing and I would tender the deed when they tendered the funds and I am sure, but I will not swear to it, that I made this clear to Mr. Mugan.

"*From The Bench:* The thing that is disturbing me, and I suppose is obvious, that this looks very much like a sharp practice where you have a conversation with another lawyer. He sends you a letter to which I gather no objection was made—

"*A.* An objection on the telephone.

"*From The Bench:* Subsequent to the letter?

"*A.* Yes, sir.

"*From The Bench:* You talked to him on the phone after he wrote this letter?

"*A.* Yes, sir. I think either I called him or he called me. I believe he called me and asked me where the deed was and I told him that I would not submit the deed in escrow.

"*From The Bench:* Was that prior to the expiration of the redemption period?

"*A.* I believe it was, Your Honor.

"*From The Bench:* Well, now the 21st of March you got a letter from the bank. Did you ever talk to the bank at all?

"*A.* I got it on the 22d, Your Honor. No, I never—

"*From The Bench:* Well, I mean, it is dated March 21.

"*A.* Yes, it was dated March 21; we received it on the 22d; I never did talk with the bank. As I remember, I didn't. I had talked to the bank subsequent to that.

"*From The Bench:* Could I go back for just a minute, Mr. Nathan? I am a little bit perplexed as to why, when you got the letter of March 16 from McIntosh & Simpson, with the other letter of March 21 from the bank, why you refused to go along with the transaction. What reason did you have for objecting to it?

"*A.* Well, I objected mainly on the grounds that—

"*From The Bench:* Was it because you didn't trust the bank?

"*A.* No, it isn't trusting the bank, Your Honor. The question is, how long—in other words, they have a deal, they have a purchaser, and the question is, suppose the purchaser decides not to carry through with the deal. How long does the deed sit in the bank?

*"From The Bench:* Could you have very easily protected yourself by a letter of transmittal to the bank?

*"A.* Yes, sir, I could've.

*"From The Bench:* But if the bank has indicated to you it is ready to close, and you have sent the deed over. They apparently were protected, weren't they?

*"A.* We could have protected ourselves—

*"From The Bench:* I am saying the bank had, at that moment; they were ready saying they were if you sent the deed over. That was prior to the redemption period, wasn't it?

*"A.* Yes.

*"From The Bench:* When did the redemption period expire?

*"A.* The redemption period expired on March 30. I guess we had our telephone conversations on the 16th, received this letter on the 20th, received the bank's letter on the 22d, and I think we had another phone conversation between the 22d and the time equity of redemption ran out. The statute is very clear on how to redeem, and I told them that I do not feel a deed was necessary. I still do not today think that a deed is necessary. I told them that if he would—if the moneys were paid, I would forward a deed.

*"From The Bench:* Well, this says, 'confirming our conversation.' That doesn't sound like a confirmation of a conversation.

*"A.* Maybe there was some misunderstandings, but I don't think so.

*"From The Bench:* Let's ask you: How do you transfer that record title from the vendor to the vendee if not by deed?

*"A.* I think that the notation by the register of deeds is sufficient to transfer the title. In other words, when there is a redemption—if there was no foreclosure, if there was just a pay-off of the land contract and the land contract requires a transfer

of the deed. Where there has been a forfeiture, the land contract is no longer in existence. It's void.

*"From The Bench:* You said forfeiture. You mean foreclosures?

*"A.* I meant foreclosure; I'm sorry. When there has been a foreclosure, there is no longer a land contract. There is a purchaser at the foreclosure sale who gets title to the property subject to the equity of redemption which is given by statute for 3 months from the date of sale.

*"From The Bench:* He has the legal title.

*"A.* He gets the legal title.

*"From The Bench:* All right now, how is that legal title conveyed to the equitable title holder?

*"A.* His deed is voided when there is a redemption because—

*"From The Bench:* That reverts the title to him, as vendor, would it not?

*"A.* Except that there is a notation that there has been a redemption and I agree, Your Honors, that there is a confusion. I think that the statute—if I had my way, I would change the statute—the statute does not require a deed. Prior to 1963, in the revised judicature act, there was no redemption from foreclosure of land contracts.

*"From The Bench:* But you didn't discuss closing this transaction on the basis of a notation purely in the register of deeds office?

*"A.* No, I had agreed—

*"From The Bench:* There is no misunderstanding in your mind but what the vendor was going to give a deed?

*"A.* Well, I explained—

*"From The Bench:* If the money had been put into your hands, there would have been a deed, would there not?

*"A.* We would be willing to have given a deed, yes.

"*From The Bench:* You wouldn't have asked that they accept the notation in the office of the register of deeds?

"*A.* I would say—

"*From The Bench:* As satisfaction, would you?

"*A.* I would say that it is satisfactory but I was willing to give a deed because I understood the problem raised by the statute. The legislature, in enacting the revised judicature act—I don't know for what reason, but I would assume for equitable reasons—decided that there should be at least the same equity of redemption that you would have in a mortgage because land contracts are so common in Michigan. All they did was they repeated the wording of the mortgage foreclosure redemption statute and put in almost a verbatim statute for redemption from land contracts. And I don't think they anticipated the problem that when the notation was made by the register of deeds the actual appearance of the title would appear to be back in the vendor, which is obviously not what they wanted. This is to me the major problem in the statute.

"*From The Bench:* It wasn't any problem, however, as far as your discussion with Mr. Mugan was concerned, was it?

"*A.* No, I had told them that I understood the problem but that I would give a deed if he paid the money.

"*From The Bench:* Would you repeat that again for me what you just said. I want to get that in context. You told him that you would give a deed. Is that what you said?

"*A.* Yes, I would have my client execute a warranty deed upon payment of the funds. I told him I did not feel it was necessary but I would do it.

"*Mr. Mugan:* May it please the Court, my name is Gerald Mugan. I represent Mrs. Elliott, the appellee in this matter.

"Our position is that counsel for the appellant has stated the issue too narrowly. The issue is not whether my letter constituted a tender, but whether

the combination of our telephone call, the enclosing of the deed, the letter from the bank, whether that put together, constituted a legal tender in this matter. We submit that it did.

"In regards to the telephone conversation that took place, first of all, Mrs. Elliott had said to me, 'What can I do to get this property back.' I said, 'You've got to pay it in full by the 30th of March, 1967.' She went to Mr. Rukowski, a real estate man, listed it, she sold it, and I called counsel, Mr. Nathan, and I said I would prepare a deed, send it down, now there is a mortgage at Citizens Federal that you people have on this, you send the deed to the bank, the bank will send Citizens Federal their money, and you will get your money. Just tell us how much it is. He told me how much it was. He said, 'Send the deed and we will send it to the bank but I think you had better get me a letter from the bank.' So I called Mr. George LaVigne and I said, 'Send the letter,' and I 'cc'ed' a copy of my letter to Mr. LaVigne. Mr. LaVigne sent them a letter confirming that the money was there, Mr. and Mrs. Ritz were ready to close, Mr. Rukowski was ready to close.

"If I may, the second conversation was the day, or the day before the 30th, that Mr. Rukowski was down on my neck to get the deed. I called for Mr. Nathan and he wasn't in and I talked to Mr. Jacob. Mr. Jacob said, 'We're not sending a deed.' And I said, 'Mr. Nathan told me that you would send a deed.' He said, 'Mr. Nathan never told you anything like that.' And I said, 'Well, I sure wish I would have recorded the conversation.' Mr. Jacob said, 'You cannot record conversations or I'll have you before the State Bar.'

"In this case, Mr. Nathan said, 'You prepare the deed and I'll get Grossman to sign it,' and I prepared the deed and sent it down. I got a title commitment from the title company which is in my file. I prepared a deed going from the Elliotts to the Ritzes who were going to purchase the property.

"*From The Bench:* Was there a copy of your letter to the bank?

"*A.* Yes, I sent a copy of my letter to the bank. I indicated 'cc' to Mr. George LaVigne.

"*From The Bench:* When the bank says, in response to your letter to McIntosh, they are referring to the letter you wrote?

"*A.* They are confirming what I said in my letter, Your Honor, of March 16. Mr. Nathan and I never discussed the statute at all. He just said, 'Get the deed and send it down and we'll get it signed.' But I think when Mr. Jacob got into this matter, then it was a different ball game. And I never talked to Mr. Nathan a second time, and I think that he has a faulty memory on that conversation."

The critical question is what took place in the telephone conversation on March 16, 1967, when defendants' attorney, Gerald E. Mugan, called plaintiff's attorney, Peter A. Nathan.

As substantiating Mr. Mugan's version of the telephone conversation of March 16, 1967, we have his letter of that date to plaintiff's attorneys and also the letter sent to plaintiff's attorneys by the Michigan National Bank on March 21, 1967. Attorney Mugan also prepared and forwarded for Grossman Building Company, a warranty deed for execution by that company. It is significant that plaintiff's attorneys did not immediately repudiate or deny the agreement reached in the telephone conversation of March 16, 1967 when they received the letter of confirmation of the same date. Seven days later, when Mr. Mugan again called plaintiff's attorneys and was unable to reach Mr. Nathan, he was informed by a Mr. Jacob that no agreement had been made and no agreement would be honored.

I am unable to agree with Justice T. M. Kavanagh that the negotiations between the parties' attorneys came to an impasse. As I view this case, a valid

agreement was consummated on March 16, 1967. The parties could and did agree upon a method of redemption that would eliminate the problem of passing title which is not dealt with by the statute.

Since the parties agreed to a method of redemption from the land contract foreclosure and transfer of the legal title from the vendor to the vendee, we do not have a situation where no action was taken by the mortgagee or the vendor of a land contract. If no agreement had been made by the parties for redemption and delivery of a deed, defendant's rights in the property would have terminated on March 30, 1967. However, an agreement was made and is enforceable in equity. Mrs. Jeannine Elliott, defendant and appellee, at the time was involved in a divorce from John F. Elliott, her husband, defendant. The Elliotts had agreed to purchase the property for $11,750 by land contract entered into on May 26, 1959. At the time the April 7, 1967 motion was filed with the circuit judge, the amount due under the foreclosure sale was $9,299.91.

Since I regard the agreement entered into by the attorneys for the parties on March 16, 1967 as a valid legal agreement as to the manner of redemption of the property, I would treat the motion dated April 5, 1967 to compel plaintiff to execute a warranty deed and the answer to motion to compel plaintiff to execute warranty deed dated April 12, 1967 as a proceeding in chancery. The circuit judge had jurisdiction of the parties in equity to enforce the agreement. I vote to affirm his action.

I agree with Justice T. M. KAVANAGH with regard to his disposition of the second issue stated in his opinion.

KELLY, J., concurred with ADAMS, J.

BLACK, J., did not sit.