*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARIA VASILIADIS,

        Plaintiff-Appellee,

v

JAMAL RUBAII,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2021

No. 349982
Wayne Circuit Court
LC No. 18-016317-AV

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Should a seller be permitted to withhold documents and interfere with reasonable and timely requests to prevent a defaulting purchaser from redeeming property? In this case, based on the specific facts before it, the district court said, "No," and granted the purchaser an extension of the redemption period. The circuit court gave no deference to the district court's factual findings, made after observing several witnesses at an evidentiary hearing. This was error. We reverse the circuit court and remand for reinstatement of the district court order.

## I. BACKGROUND

Jamal Rubaii purchased a home from Maria Vasiliadis on land contract for $265,000, but Vasiliadis remained in the home per the contract's terms. Rubaii made a down payment of $50,000, six monthly payments of $1,000, and then paid $15,000 with the belief that Vasliadis was granting him an extension on paying the final balloon payment. Rubaii did not make the balloon payment on time and Vasiliadis filed a forfeiture action in district court. On August 31, 2018, the parties entered a consent judgment of forfeiture, which granted Rubaii 90 days to redeem the property for the remaining amount due of $206,000.

Vasiliadis thereafter stymied Rubaii's attempts to secure a mortgage loan to pay the redemption amount. On September 20, 2018, Rubaii filed a motion to enforce the consent judgment, specifically seeking an order to permit an appraiser to enter the home. The district court granted the motion and ordered Vasiliadis to permit Rubaii's appraiser access by October 9. Vasiliadis did not comply and Rubaii filed another enforcement motion and to hold Vasiliadis in contempt on October 11. Vasiliadis's granddaughter, Briana Stridiron, stepped in and coordinated

the appraisal for October 13. Vasiliadis thereafter failed to provide documents necessary for Rubaii to secure a loan to redeem the property that was still in Vasiliadis's name—specifically, the payoff amount for her mortgage loan with Chase Bank and a certified, original copy of her husband's death certificate. Two financing deals fell through. By the time Vasiliadis sufficiently cooperated for Rubaii to secure a loan, the closing could not be scheduled until November 29, one day before the end of the redemption period. And even then, Vasiliadis failed to provide a signed warranty deed and an original death certificate, preventing the closing of the financing and Rubaii's purchase of the property from Vasiliadis. Had Vasiliadis provided the necessary materials, however, the loan proceeds would not have been released for another three days, two days after the close of the redemption period.

On December 5, 2018, Rubaii filed an emergency motion to amend or void the consent judgment in order to extend the redemption period. The district court conducted an evidentiary hearing on December 12. Rubaii presented witnesses to Vasiliadis's interference with his appraisal of the property and failure to provide necessary documents and information to allow Rubaii to secure financing. Rubaii also presented testimony that two financing deals fell through because of Vasiliadis's interference and delays. Indeed, Rubaii's attempt to secure a mortgage loan from Capital Mortgage Funding was "ultimately killed" because Vasiliadis's attorney provided a payoff statement for the land contract that included "land contract damages" not included in the redemption provision of the August 31 consent judgment.

Vasiliadis presented a mortgage expert to explain how a purchase money mortgage and a refinancing transaction work. This witness actually supported Rubaii's evidence that he was proceeding as expected for such transactions and that Vasiliadis's actions (or inactions) caused unnecessary delay. Stridiron took the stand to explain how she assisted her grandmother. Stridiron asserted that Vasiliadis was unwilling to cooperate with Rubaii's agents "unless it was okayed" by the court because of "the circumstances we've been put through for the past two years." Vasiliadis also testified. She claimed that she advised her attorney that she did not have an original death certificate for her husband and asserted that her attorney never instructed her to request a new one, shifting the blame for her failure to provide necessary documents to close the sale of her property.

The district court ordered an extension of the redemption period. The district court explained that, under Michigan precedent, the right to redeem is typically statutory and cannot be altered by the courts. However, the district court stated that in certain situations, including when fraud was involved, a court may use its equitable powers to deviate from the statutory redemption period. The court concluded that the testimony from the evidentiary hearing "clearly establishe[d]" that Vasiliadis "acted in bad faith which prohibited the timely closing of the premises." Specifically, the court cited that Vasiliadis: (1) initially refused to allow the appraiser entry to the home; (2) refused to timely provide the payoff amount of her underlying mortgage with Chase; (3) failed to provide her husband's death certificate; (4) failed to sign a warranty deed transferring title to Rubaii; and (5) failed to adhere to the district court's order to allow Rubaii access to the home to complete the appraisal.

The district court rejected Vasiliadis's contention that she was not obligated to cooperate with Rubaii in his attempts to secure financing to redeem the property. Although Vasiliadis would not be obligated to comply with terms beyond the scope of the consent judgment, the steps required for the mortgage process were not new conditions. The court explained that permitting conduct

like Vasiliadis's would prevent any purchaser from ever redeeming property. Moreover, the district court concluded, Vasiliadis's actions "clearly were done in bad faith which this court feels meets the threshold for fraud." Her "deception was intentionally calculated . . . in order to get a windfall. She was trying to use the redemption statute as a sword and shield by getting back her property and keeping the payments already paid." Therefore, the district court "exercise[d] its equitable powers" and extended the redemption period by 30 days from the date of the order. The court further ordered Vasiliadis to provide an updated Chase payoff, her husband's death certificate, and a signed warranty deed within 10 days.

Vasiliadis appealed to the circuit court, arguing the district court (1) erroneously ruled that she had an obligation to comply with conditions imposed by Rubaii and his third-party lender; (2) erroneously found fraud to extend the redemption period; and (3) ignored that the redemption payment would not have been made until several days after the redemption period cutoff. Vasiliadis further accused Rubaii of ignoring relevant caselaw related to compliance with third-party lender requirements.

The circuit court reversed the district court's order. The circuit court found that clear and convincing evidence of fraud or "lack of cooperation" was lacking. "The fact of the matter is the redemption payment was not made timely, so for that reason I'm going to reverse" the district court's order, the circuit court ruled.

We granted Rubaii's application for leave to appeal the circuit court's reversal of the district court's order. *Vasiliadis v Rubaii*, unpublished order of the Court of Appeals, entered November 20, 2019 (Docket No. 349982).

## II. STANDARD OF REVIEW

We review de novo a circuit court's affirmance or reversal of a district court order. *Riverbrook v Fabode*, ___ Mich App ___; ___ NW2d ___ (Docket No. 349065, 2020), slip op at 6. And the circuit court reviewed de novo the district court's award of equitable relief. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). Review of the district court's underlying factual findings is for clear error. *Id*. Clear error exists when the reviewing court is left with a definite and firm conviction that a finding was erroneous after reviewing the entire record. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

## III. ANALYSIS

The district court properly granted equitable relief and we discern no clear error in any of its underlying factual findings.

This case involves the statutory right to redeem property following a forfeiture judgment. The right of redemption is governed by MCL 600.5744(4), which states:

> If a judgment for possession is based on forfeiture of an executory contract for the purchase of the premises, a writ of restitution must not be issued until the expiration of 90 days after the entry of judgment for possession if less than 50% of

the purchase price has been paid or until the expiration of 6 months after the entry of judgment for possession if 50% or more of the purchase price has been paid.

As Rubaii had paid less than half the purchase price, he had 90 days to redeem the property under the statute. The parties included that time limit in their consent judgment.

Although governed by statute, equity sometimes "warrant[s] deviation" from the redemption period. *Flynn v Korneffel*, 451 Mich 186, 199; 547 NW2d 249 (1996). Equitable deviation is generally based on "unusual circumstances," "such as fraud . . . ." *Id*. If a court relies on fraud, however, the court must remember that "fraud requires proof by clear and convincing evidence." *Id*. But fraud is not the only unusual circumstance that may trigger the need for equitable relief. *Id*. at 199 n 25. Here, there is also another principle in play. The redemption period was included in a consent judgment reached by the parties. Such a settlement is a contract. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 665; 770 NW2d 902 (2009). And contracts carry an implied covenant of good faith and fair dealing. *Bank of America, NA v Fidelity Nat Title Ins Co*, 316 Mich App 480, 500-501; 892 NW2d 467 (2016).

In *Flynn*, the Supreme Court summarized two cases, one representing "an archetypal case of fraud" in a redemption case "that demonstrate[d] the necessity of this Court's intervention," *Flynn*, 451 Mich at 200, and the other presenting a closer case. In the matter involving clear fraud—*Marble v Butler*, 249 Mich 276; 228 NW 677 (1930)—the land contract vendor "refused to reveal the amount remaining due on the land contract," "failed to furnish an abstract of the property in accordance with the contract," and refused to accept payment and execute a deed when the purchaser attempted to redeem the property. *Flynn*, 451 Mich at 199-200.

The contrasting case—*Grossman Bldg Co v Elliott*, 382 Mich 596, 601; 171 NW2d 441 (1969)—involved land contract vendees who defaulted on their payments but found a new purchaser during the redemption period. The vendees required the vendor to execute a warranty deed to complete the new financing deal. The *Flynn* Court described:

> Approximately two weeks before the statutory redemption period was scheduled to expire, the vendees' attorney wrote a letter to the vendor's attorneys requesting the vendor to execute a warranty deed. The vendees stated that they had found a purchaser for the property and that the bank had approved the loan. An attorney for the vendor responded that his client was not going to send the deed and that "as far as [they] were concerned, that [was] it." [*Flynn*, 451 Mich at 200-201 (quotation marks and citation omitted).]

The Supreme Court found this evidence inadequate to support fraud warranting equitable relief. Rather, the Court stated, "[T]he only view we can take of the facts of this case is that the negotiations between the parties' attorneys came to an impasse." *Grossman*, 382 Mich at 605.

The *Flynn* Court also found a lack of fraud warranting an equitable extension of the redemption period. In *Flynn*, 451 Mich at 189-190, the vendees defaulted on a land contract and then failed to defend in a forfeiture action. During the redemption period, the Flynns obtained a loan from a third party, and set closing for the day the redemption period expired. *Id*. at 191. Mr. Flynn spoke to defendant Korneffel in the week leading up to the closing, indicating that he had

secured financing and ensuring that other encumbrances had been cleared, but did not advise Korneffel of the loan closing. *Id*. at 191-192. Instead, Flynn advised Korneffel of the closing on the scheduled date (the final day of the redemption period), when the title company advised Flynn that the old encumbrances still remained on the title report. Neither Korneffel nor his attorney resolved the matter that day and the closing could not occur. Accordingly, Flynn placed a check for the redemption amount into escrow and the title company sent Korneffel a letter indicating that it would release the funds upon receipt of a warranty deed and the mortgage discharges. *Id*. at 193. Korneffel sought court intervention to avoid this sudden post-redemption request for documents to assist Flynn in financing his redemption plan. As in *Grossman*, the Supreme Court in *Flynn*, 451 Mich at 200, saw no sign that Korneffel or his counsel intentionally made themselves unavailable to receive the redemption funds or to interfere with Flynn's financing plan. There was no sign of fraud, only that the parties' attorneys were at an impasse. *Id*. at 202.

After deciding there was not clear or convincing evidence of fraud, the Court moved to the question of whether the Flynns sufficiently tendered payment on the final day of the redemption period. The Court in *Flynn* stated that tender of the redemption funds must "be without qualification or condition. Placement of the judgment amount in escrow in the present case amounted only to an offer to close *pending fulfillment of the third-party conditions*." *Flynn*, 451 Mich at 204 (emphasis added). The *Flynn* majority rejected the *Flynn* dissent's attempts to "engraft upon the statute an obligation to convey 'marketable title' " or produce materials and information required by a third-party lender, "even though the [Flynns] had not met their obligations under the statute." *Id*. at 205-206. But the Court declined to "decide the case in which a vendee notifies the vendor in a reasonable manner and within a reasonable time of a third-party lender's conditions on disbursement of redemption funds." *Id*. at 206.

In this case, unlike *Flynn* and *Grossman*, there was evidence of fraud on Vasiliadis's part—and that she violated the covenant of good faith and fair dealing in performing her end of the consent judgment. The record supports the district court's finding that Vasiliadis and her attorney purposefully obstructed Rubaii's repeated *timely* attempts to obtain a mortgage so he could exercise his right of redemption. Rubaii and his lenders did not interject improper third-party conditions on the consent judgment; everything requested of Vasiliadis was customary to the purchase of property. Vasiliadis refused Rubaii's appraiser access to the property approximately two months before the expiration of the redemption period, forcing Rubaii to seek court intervention. Vasiliadis and her attorney provided an incorrect land contract payoff statement and then refused to contact Vasiliadis's mortgage provider for a necessary mortgage payoff statement. Vasiliadis and her attorney also repeatedly failed to present an original copy of Vasiliadis's husband's death certificate to establish that he was no longer an owner of the property. The closing on Rubaii's loan only occurred on the penultimate day of the redemption period because Vasiliadis and her attorney actively prevented it from occurring earlier and because their interference forced Rubaii to restart the process with new lenders twice. The last step needed to transfer the property and close the loan—the presentation of a warranty deed—was completely in Vasiliadis's court and yet she failed to bring the deed to the closing. The district court could infer from the record evidence that Rubaii had paid $71,000 for a home he never possessed and that Vasiliadis and her attorney took evasive actions to keep both the property and the money.

The circuit court did not afford any deference to the district court's factual findings, merely stating, "I didn't see it," i.e. evidence of fraud. However, the district court's findings were entitled to deference, especially in light of its unique opportunity to observe the witnesses before it.

Vasiliadis further contends that Rubaii was not entitled to equitable relief because his hands were unclean. The unclean-hands doctrine is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [opposing party]." *Rose v Nat Auction Group*, 466 Mich 453, 466; 646 NW2d 455 (2002) (quotation marks, citation and emphasis omitted). Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief. *Stachnik v Winkel*, 394 Mich 375, 386; 230 NW2d 529 (1975). However, Vasiliadis contends that Rubaii's transgression was failing to remit the payoff funds within the redemption period. Specifically, the redemption funds could not have been released until two days after the redemption period expired. As noted, this situation was created by Vasiliadis and her attorney, not Rubaii. The redemption funds could have been presented much earlier in the redemption period had Vasiliadis not actively interfered with Rubaii's attempts to secure financing.

We reverse the circuit court's opinion and order and remand for reinstatement of the district court order extending the redemption period. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro