408 Mich. 345 (1980)
292 N.W.2d 438
SOLO
v.
CHRYSLER CORPORATION
Docket No. 61003. (Calendar No. 3).
Supreme Court of Michigan.
Argued on rehearing December 3, 1979.
Decided originally on May 1, 1979.
Decided May 27, 1980.
James D. Jackson for plaintiff.
Dickinson, Wright, McKean, Cudlip & Moon (by Thomas G. Kienbaum and Thomas A. Zimmer) for defendant.
*348 Amici Curiae:
Clark, Klein & Beaumont (by Dwight H. Vincent, J. Walker Henry, and James E. Baiers) for Michigan Manufacturers Association and Employers Association of Detroit.
Conklin, Benham, McLeod, Ducey & Ottaway, P.C. (by Thomas P. Chuhran), for Michigan Self-Insurers' Association.
ON REHEARING
Decided originally on May 1, 1979., 406 Mich 240.
KAVANAGH, J.
By per curiam opinion reported at 406 Mich 240; 277 NW2d 629 (1979), we summarily reversed the Court of Appeals decision in Solo v Chrysler Corp (On Rehearing), 77 Mich App 354; 258 NW2d 224 (1977), which had affirmed the trial court's grant of a summary judgment. We granted rehearing to afford the parties an opportunity to brief and submit oral argument on the issue presented: May a worker's compensation redemption agreement and order be set aside on the basis of a mutual mistake of fact? We conclude that it may, reverse the Court of Appeals and the trial court and remand to the trial court for further proceedings.
The facts giving rise to this controversy are succinctly stated in our per curiam opinion but are repeated here for convenience:
Josephine Solo was injured in a work-related accident on February 18, 1969. Chrysler Corporation voluntarily paid benefits until she returned to work on April 21, 1969. Mrs. Solo stopped working in September 1969 and filed a claim for workers' compensation benefits. The parties reached an agreement to redeem the claim for $10,500, and the hearing referee approved the redemption following a hearing on June 15, 1970.
On November 1, 1971 Mrs. Solo filed a new *349 petition for benefits, claiming that the settlement was not for the complete injury. The hearing referee and the Workmen's Compensation Appeal Board denied the petition on the ground that the agency was without authority to set aside a redemption agreement.
Mrs. Solo commenced this action in the Wayne Circuit Court, seeking to set aside the redemption. The trial judge granted Chrysler's motion for summary judgment on the ground that there was no genuine issue as to the existence of fraud and that the allegations of mutual mistake failed to state a claim for which relief could be granted.
The Court of Appeals initially reversed. Solo v Chrysler Corp, 76 Mich App 63; 255 NW2d 770 (1977). However, it granted rehearing and affirmed, with Presiding Judge T.M. BURNS dissenting. 77 Mich App 354; 258 NW2d 224 (1977).
Our per curiam (Solo, supra, 406 Mich 242) noted:
"Both the trial judge and the Court of Appeals relied heavily on the following language from Johnston's Administrator v United Airlines, 23 Mich App 279, 285; 178 NW2d 536 (1970):
"`A redemption order is a final determination and an award made and accepted cannot be disturbed except upon a showing that it was procured by fraud. Panozzo v Ford Motor Co, 255 Mich 149 [237 NW 369] (1931); Catina v Hudson Motor Car Co, 272 Mich 377 [262 NW 266] (1935).'",
and we held:
"Panozzo and Catina should not be read as limiting to fraud the grounds for setting aside a redemption. Those decisions said that fraud could be a basis for setting aside a redemption; they did not say that redemptions may be disturbed only on that basis."
*350 We have not been dissuaded from that view.
In its brief and argument, defendant claims that the workers' compensation statute limits the rescission of redemption agreements to instances of fraud. Observing that redemption agreements must be approved by a hearing referee in order to be valid, MCL 418.835; MSA 17.237(835), it maintains that once approved, these agreements become findings of fact which may be impeached only by proof of fraud. MCL 418.861; MSA 17.237(861). We do not agree.
The effort to describe the exact nature of a redemption agreement and the order approving it has divided this Court on several occasions. In Jordan v C A Roberts Co, 379 Mich 235; 150 NW2d 792 (1967), and (On Rehearing) 381 Mich 91; 158 NW2d 901 (1968), the issue was whether defendant's status as an employee was res judicata on account of the order approving a redemption agreement between the employer and the widow of the asserted employee. The majority of the court on rehearing treated the order as a fact-finding not subject to review.
In Bugg v Fairview Farms, Inc, 385 Mich 338; 189 NW2d 291 (1971), however, we pointed out that an employee's status was properly a conclusion of law based on a given state of facts and that the adjudication of the conditions of liability for the limited purpose of approving the agreed payment was all that was involved in an order approving a redemption agreement.
We do not recognize approval of a redemption agreement as a finding of fact nor an admission of liability. White v Weinberger Builders, Inc, 397 Mich 23, 34; 242 NW2d 427 (1976); MCL 418.835; MSA 17.237(835). Accordingly we do not regard the limitations of MCL 418.861; MSA 17.237(861) *351 as applicable to an order approving a redemption agreement.
The workers' compensation statute is silent on the matter of setting aside a redemption agreement. While the statute allows for the approval and review of redemption agreements, it neither provides for, nor forbids, rescission.
Amicus curiae Michigan Self-Insurers' Association argues that the absence of statutory provision for remedy prevents the grant of equitable relief here. Amicus quotes our language in Luyk v Hertel, 242 Mich 445, 447; 219 NW 721 (1928),[1] and in Tews v C F Hanks Coal Co, 267 Mich 466, 468-469; 255 NW 227 (1934),[2] and argues that this Court is not at liberty to fashion equitable relief in the absence of legislative authorization.
These opinions, however, dealt with the instances where the workers' compensation statute spoke to the specific remedy to be applied and hence we were not free to fashion further relief: Luyk (findings of fact could be set aside only for fraud, thereby excluding relief for newly discovered evidence); Tews (election provision precluded an action against both the employer and the third-party, even when done with consent); Wagner v LaSalle Foundry Co, 345 Mich 185, 197; 75 NW2d 866 (1956) (legislative judgment regarding the territorial *352 jurisdiction of the Michigan workers' compensation law controlled).
Where a contract is claimed to have been induced by fraud or mistake, however, plenary relief traditionally rests exclusively in equity, for at law such a contract is enforceable. Walsh, Equity, § 4, p 26; 1 Pomeroy, Equity Jurisprudence, § 131, p 180.
Here the statute provides no legal remedy for mistake, nor does it contain any language expressly limiting equitable jurisdiction with regard thereto. Considering the scope of the statute and a reasonable construction of it and its operation, we discern no legislative intent to limit the court's traditional equitable jurisdiction to deal with mistakes. See 1 Pomeroy, Equity Jurisprudence, § 279, p 620.
Neither defendant nor amici contend that the workers' compensation statute contains express language negating equity's jurisdiction in matters within the statute's scope. Moreover, in view of the protective, income-maintenance function of the statute, Harrington v Dep't of Labor & Industry, 252 Mich 87, 89; 233 NW 361 (1930), we do not believe that the Legislature meant to foreclose from relief one who enters into a contract assuming his injuries are minimal when in fact they are disabling for life.
This Court has repeatedly invoked its equitable powers to relieve a claimant from a settlement procured by fraud, Panozzo v Ford Motor Co, 255 Mich 149, 150; 237 NW 369 (1931). We see no reason within the language or the purpose of the workers' compensation statute why we should hesitate to do so in instances of mutual mistakes of fact. Any contract entered into under either circumstance *353 may be held unenforceable. See 3 Corbin, Contracts, § 605, p 643; 1 Corbin, § 146, p 636, fn 32; 13 Williston, Contracts (3d ed), § 1557, p 242; 12 Williston, § 1486, p 321.
Defendant objects to the comparison this Court drew in its first opinion between out-of-court tort settlements and workers' compensation redemption agreements. It observes that we have allowed rescission in tort settlements only when the negotiations had been conducted in haste, the payment made was a nominal sum, the liability of the defendant was clear in the minds of the parties, and no bargaining had occurred on the question which plaintiff alleged was the subject of the mutual mistake. Denton v Utley, 350 Mich 332; 86 NW2d 537 (1957); Hall v Strom Construction Co, 368 Mich 253; 118 NW2d 281 (1962); Van Avery v Seiter, 383 Mich 486; 175 NW2d 744 (1970). Because the workers' compensation statute has statutory safeguards against these dangers attendant upon such tort settlements, defendant argues that the need for rescission is obviated in all instances where mutual mistake of fact is alleged.
Defendant confuses equity jurisdiction with equity jurisprudence. Whether a given case falls within equity jurisdiction is a question different from whether the case is one in which the relief peculiar to that jurisdiction should be granted. 1 Pomeroy, § 131, p 179. Equity has exclusive jurisdiction to rescind an agreement on the ground of mutual mistake. The factors outlined in Denton, Hall and Van Avery merely identified those circumstances which convinced the Court that equitable relief should be granted.
It may be that the statutory safeguards in the workers' compensation legislation will make equitable relief unnecessary in a particular case. But *354 they are only factors to be considered; they do not divest the court of its equitable powers altogether.
Amici Michigan Manufacturers Association and Employers Association of Detroit, as well as defendant, ask this Court to consider the impact this decision will have upon the workers' compensation system. They contend that the settlement process is the lifeline of the system, and to allow rescission of an agreement on the ground of mutual mistake would cripple the workers' compensation process.
Such prophecies of doom may of course be correct, but we are not convinced. The logic expressed in Professor Larson's work seems much more compelling:
"In view of the practical protective function of workmen's compensation, the desirability of preserving a right to reopen for genuine mistake seems too self-evident for argument. In the nature of things, there are bound to be many occasions when even the most thorough and skillful diagnosis misses some hidden compensable condition. Should the claimant then be penalized because of an erroneous disposition, either by award or settlement, when the only fault lies in the imperfections of medical science? Typical of the miscarriages of compensation justice that occur when reopening for mistake is unavailable is that in the Georgia case of Miller v Hartford Accident & Indemnity Co [86 Ga App 503; 71 SE2d 782 (1952)]. In the absence of continuing jurisdiction to reopen for newly discovered evidence or mistake, this case held that an earlier award could not be corrected although found subsequently to have been based on a completely false medical diagnosis. Here, due to the difficulty of discovering the fractured vertebra by X-ray because of its position, the claimant's back pains had been attributed to that last refuge of the baffled diagnostician  emotional instability. When the truth was discovered, it was too late, since, said the court, the earlier decision denying compensation was res judicata. Similarly, in a North Carolina case, a few weeks after the claimant had made a compromise settlement of his compensation claim, an abscess was discovered at the location of the spinal *355 fusion operation. The court held that the compromise settlement could not be rescinded on the grounds of mutual mistake of fact, since `the parties were contracting with reference to future uncertainties and were taking their chances as to future developments, relapses and complications or lack thereof.' This kind of `chance-taking' approach to legal remedies is out of place in a modern social-insurance system, whose only purpose is to see to it that victims of industrial accident receive the protection they need. The sounder approach is that in the Minnesota case of Mattson v Abate, [279 Minn 287; 156 NW2d 738 (1968)] where the court did not hesitate to set aside a settlement based on the mistaken assumption by everyone on both sides that claimant would be able to return to work and perform his old duties." (Citation omitted.) 3 Larson, Workmen's Compensation, § 81.52, pp 15-545, 15-546.
True, this observation was made in the section treating of broad reopening statutes and our own statute makes no provision for reopening; nevertheless since the Legislature did not see fit to limit the traditional power of an equity court to relieve from the effect of mistake as well as fraud, we conclude the Legislature anticipated the power would continue to be appropriately exercised.
The final argument advanced is that in this case there was no mutual mistake of fact to justify setting aside the redemption agreement. This may very well be true, but it should be determined by the trial court only after consideration of the evidence adduced to establish it rather than ruling as a matter of law that a mutual mistake of fact, even if proved, can never serve as a basis for setting aside a redemption agreement.
Reversed and remanded.
Costs to plaintiff.
COLEMAN, C.J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.
NOTES
[1] "The workmen's compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. Rights, remedies, and procedure thereunder are such and such only as the statute provides. If the statute is short of what it should contain in order to prevent injustice, the defects must be cured by future legislation and not by judicial pronouncement."
[2] "The compensation act is in derogation of the common law and, therefore, its measure of relief may not be extended beyond its express terms; it is a legislative creation permitting no enlargement by principles of equity or common-law adaptations. It is arbitrary and where it speaks nothing can be added nor changed by judicial pronouncement. It imposes liability upon operatives under its provisions and measures exclusive relief in its own terms."