PRATER v GAME TIME, INC

Docket No. 69506. Submitted February 16, 1984, at Lansing.—Decided
    May 15, 1984. Leave to appeal applied for.
    Dallas Prater made a claim for workers' disability compensation,
        alleging work-related injuries to his back, leg, nervous system,
        cardiopulmonary system, and cardiovascular system. Plaintiff's
        witness, Dr. Newman, testified in a deposition that Prater
        probably had fume fever, caused by exposure to welding fumes,
        and residual emphysema. Defendant's witness, Dr. Bates, testi-
        fied that plaintiff did not have emphysema, fume fever, or any
        lung disease. Prater entered into a redemption agreement with
        his employers, Game Time, Inc., and T & S Equipment Com-
        pany, and their insurers. A redemption hearing was held and
        the agreement was approved by the hearing referee. Plaintiff
        sought a review by the director of the bureau. At the review
        hearing, plaintiff testified that he was unaware of the diagnosis
        of emphysema at the time he agreed to the redemption. An
        assistant deputy director reversed the redemption order and
        denied the redemption because plaintiff changed his mind when
        additional medical information became known to him. The
        Workers' Compensation Appeal Board affirmed. The employers
        appealed by leave granted. *Held:*

    A change of heart by a party to a redemption agreement
        settling a workers' disability compensation claim may not form
        the sole basis for the director's automatically setting aside the
        approval of the hearing referee without a hearing or evalua-
        tion. An attorney acts as an agent for his client and knowledge
        of facts by the attorney is imputed to his client. Furthermore,
        plaintiff knew that he was redeeming his claim for a lung
        problem. Therefore, the agreement should have been upheld.

    Reversed and the redemption order reinstated.

1. WORKERS' COMPENSATION — REDEMPTION AGREEMENTS.
    Whether a workers' disability compensation hearing officer's

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 462, 635.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 465, 466, 681.
[3] 7 Am Jur 2d, Attorneys at Law § 136.

approval of a redemption agreement is just and proper is a question of law (MCL 418.837[2]; MSA 17.237[837][2]).

2. WORKERS' COMPENSATION — APPEAL — REDEMPTION — CHANGE OF HEART.

A change of heart by a party to a redemption agreement settling a workers' disability compensation claim may not form the sole basis for the director's automatically setting aside the approval of the hearing referee without a hearing or evaluation (MCL 418.837[2]; MSA 17.237[837][2]).

3. ATTORNEY AND CLIENT — IMPUTED KNOWLEDGE — AGENCY.

An attorney acts as an agent for his client and knowledge of facts by the attorney is imputed to his client.

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *Thomas D. Geil*), for plaintiff.

*Munroe & Nobach, P.C.* (by *Cameron C. McComb*), for defendants.

Before: DANHOF, C.J., and HOOD and SHEPHERD, JJ.

PER CURIAM. Defendants Game Time, Inc., and Hartford Accident & Indemnity Company (defendants) appeal by leave granted the decision of the Workers' Compensation Appeal Board (WCAB) which affirmed the reversal by the assistant deputy director of the Bureau of Workers' Disability Compensation of the redemption agreement between defendants and plaintiff.

On May 28, 1981, plaintiff filed for a workers' disability compensation hearing, claiming that he suffered from work-related injuries to his back, leg, nervous system, cardiopulmonary system, and cardiovascular system. In support of his claim, plaintiff deposed Dr. Lawrence Newman, who testified that plaintiff probably had "fume fever" probably caused by plaintiff's exposure to welding fumes,

accompanied by "residual emphysema". Dr. New-
man agreed that plaintiff's cigarette smoking could
also have been a contributing factor to his condi-
tion. Defendants' witness, Dr. Richard Bates, testi-
fied by deposition that plaintiff did not have em-
physema, that at most plaintiff suffered from
chronic bronchitis. Furthermore, Dr. Bates found
the diagnosis of fume fever and emphysema or any
lung disease to be totally unsupported.

On June 10, 1982, a hearing was conducted
before a hearing referee at which plaintiff agreed
to redeem defendants' liability. Plaintiff testified at
the hearing that he understood that he was set-
tling all claims relating to his former employment
with defendants Game Time, Inc., and T & S
Equipment Company. Plaintiff's attorney asked
him at the redemption hearing:

> "[Plaintiff's counsel]: In other words, we did make a
> claim relative to the stroke that you suffered, and we
> made a claim relative to your back problem, but if
> there is any other problem that were to arise later on,
> you would not be able to come back and say, 'I've
> obtained more information or I'm more disabled or I
> have a condition which I did not know about.' And
> they're trying to settle all of the claims at this time. Do
> you understand that?
> "[Plaintiff]: Yes.
> "[Plaintiff's counsel]: You in addition had some lung
> problems, and, as I understand it, you were taken off
> your welding job as a result of the lung difficulties; is
> that correct?
> "[Plaintiff]: Yes.
> "[Plaintiff's counsel]: That claim is also being settled
> in the process of this. Do you understand that?
> "[Plaintiff]: Yeah."

The redemption agreement was approved and an
order entered by the hearing referee on June 10,

1982. On June 15, 1982, plaintiff requested a review of the agreement, stating:

"Here is a copy of my hearing. I would like another review or hearing. I have thought this through carefully and I don't feel that $18,000 is a fair settlement for what I've been through and what I have to go through the rest of my life. With my injured back. And my breathing and lungs from welding at Game Time, Inc., and at T & S Equipment. So I want to appeal this case."

Plaintiff's request for a review was approved.

At the resultant hearing on July 20, 1982, plaintiff testified that, when he agreed to the redemption, he was unaware that Dr. Newman had diagnosed emphysema; that plaintiff did not know of that diagnosis until after the hearing when he read the doctor's deposition testimony. He said he had asked his attorney about "what report Newman gave me, and he told me at the time he would send me a copy of it, but he never sent me a copy either".

The assistant deputy director, who conducted the review hearing, reversed the redemption order. His reversal was affirmed by a majority of the WCAB on January 10, 1983, who wrote:

"We would affirm the assistant deputy director. In our opinion the plaintiff's reason for requesting reversal is substantially more than a change of heart. It matters not that we may equate lung problems or cardio-pulmonary problems with emphysema; it apparently means something dramatically different to the plaintiff herein. In any event, the assistant deputy director's review allows the exercise of discretion and we feel that the decision is reasonable and supported by the facts. The hearing before the assistant deputy director clearly reveals that plaintiff was not aware of this specific diagnosis having been made until after the redemption

hearing. While we, as factfinders, may not be impressed with the distinction before us, it appears to us that if plaintiff had been aware of the existence of this condition he would not have agreed to compromise his claim."

However, the dissenting member of the WCAB found three problems with plaintiff's assertion of new information:

"First, all medical proofs had been taken well before the redemption date and the contents were presumably available to plaintiff—particularly the diagnosis of his own litigational expert; second, plaintiff's own petition a year earlier had asserted the pulmonary problem he now claims a new discovery of; third, the existence of 'emphysema' is itself in serious dispute considering the split of medical opinion."

These problems caused the dissent to conclude:

"The settlement, per the record made of it, was a conscious agreement to compromise the various medical and causality disputes. It was a substantial amount, freely entered into. Plaintiff's change of heart, even coupled with what he claims to be new information, is not enough to convince me that the approved settlement was anything but proper—then and now."

Defendants argue on appeal that the WCAB erred in affirming the assistant deputy director's reversal of the redemption order because his reversal was improperly predicated on nothing more than plaintiff's change of heart concerning the desirability of settling his claim for the amount agreed upon. We agree.

MCL 418.837; MSA 17.237(837) provides for review of a referee's decision affirming or rejecting a redemption agreement. That statute provides in pertinent part:

"The director may, or upon the request of any of the parties to the action shall, review the order of the hearing referee entered under this section. Unless review is ordered or requested within 15 days of the date the order of the hearing referee is mailed to the parties, the order shall be final. In the event of review and in accordance with such rules as the director may prescribe and after hearing, the director shall enter such order as he deems just and proper. Any such order of the director may be appealed to the board within 15 days after the order is mailed to the parties." MCL 418.837(2); MSA 17.237(837)(2).

Whether the assistant deputy director properly decided that the instant redemption agreement was unjust and improper is a question of law. See *Solo v Chrysler Corp (On Rehearing)*, 408 Mich 345, 350; 292 NW2d 438 (1980) (the approval of a redemption agreement is not recognized as a finding of fact).

Prior to 1980, the Bureau of Workers' Disability Compensation apparently treated the 15-day appeal period as a "cooling off" period. During this time the director could automatically set aside an agreement if either party decided that it no longer wished to settle. *Harrington v Brown Brothers, Inc*, 409 Mich 468; 295 NW2d 491 (1980). The Court in *Harrington* disapproved of this treatment:

"We are satisfied that the board has not correctly read or applied these provisions. The board's policy of automatically setting aside the referee's order of approval if one of the parties has a change of heart within 15 days is in direct conflict with the legislative intent to have the director hold a hearing and exercise his discretion in an order he 'deems just and proper'.

* * *

"The referee's order may be reviewed by the director on his own initiative or must be reviewed upon the timely request of either party to determine whether the

referee erred in concluding that the redemption agreement serves the purposes of the act or that for some reason the approval order is not just and proper. Whatever effect, if any, a party's 'change of heart' should have on the referee's order of approval is something the director should decide in making his order on review. This 'change of heart' cannot, however, form the basis for automatically setting aside the approval order without hearing or evaluation by the director." 409 Mich 472-473.

In the instant case, plaintiff did not allege only that he had changed his mind. Rather, plaintiff also asserted that he decided against the redemption agreement because he discovered that Dr. Newman had diagnosed him as suffering from emphysema. Nothing in *Harrington* prevents a director from reversing a redemption order when one of the parties subsequently discovers new information. In fact, the Supreme Court in *Solo v Chrysler Corp, supra,* allowed recission of a workers' compensation agreement long after the 15-day appeal period had ended when the injured party realized that her injuries were more serious than she had expected or realized. There, the Court relied on the general rule that a contract is unenforceable if mistakes of fact are made. *Id.,* pp 352-353.

Since the Supreme Court has implicitly deemed permissible the reversal of a redemption order for mistakes of fact, the deciding issue in the instant case is whether the assistant deputy director correctly determined that plaintiff had discovered new information, since he found plaintiff's change of heart, based as it was on this new information, to be a valid reason for reversing the redemption order. We conclude that the determination was not justified.

Plaintiff claimed that he had no knowledge of

Dr. Newman's diagnosis of emphysema until after he had already redeemed defendants' liability. However, plaintiff's attorney was well aware of Dr. Newman's diagnosis, since Dr. Newman appeared as plaintiff's witness. An attorney acts as an agent of his client. *Fletcher v Bd of Ed of School Dist Fractional No 5,* 323 Mich 343, 348; 35 NW2d 177 (1948). As an agency relationship exists between the two, a plaintiff is charged with the knowledge of his attorney. *Geel v Goulden,* 168 Mich 413, 419-420; 134 NW 484 (1912). Consequently, even if plaintiff did not have actual knowledge of the emphysema diagnosis prior to settling his compensation claim, plaintiff cannot now assert that this information was new or unavailable to him.

Nor would imputing plaintiff with the knowledge possessed by his attorney in this case cause plaintiff an undue hardship. The Court in *Solo v Chrysler Corp, supra,* based its ruling primarily on unfairness potentially caused by the imperfections of medical science, which could result in complete misdiagnosis. *Id.,* p 354. However, Dr. Newman's diagnosis of emphysema in the instant case was made well before the parties entered into their redemption agreement. Moreover, plaintiff alleged in his initial petition that he suffered from cardiopulmonary problems. Plaintiff was aware at all times that he claimed "lung" problems and specifically relinquished any claim to further recovery from defendants because of those lung problems at the redemption hearing. It is not clear, in fact, that plaintiff did or does suffer from emphysema; although Dr. Newman testified in his deposition that plaintiff might suffer from "residual emphysema", Dr. Bates denied the presence of any such disease.

The assistant deputy director therefore errone-

ously concluded that plaintiff's assertion of new information was sufficient to reverse the referee's redemption order. As the reversal was based solely on plaintiff's change of heart and on an unsupported claim of new information, the WCAB erroneously affirmed the assistant deputy director's reversal.

Reversed and the redemption order reinstated.

No costs, a public question being involved.