*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY MILLER,

        Plaintiff/Counterdefendant/Third-
Party Defendant-Appellee,

v

DANIEL GRIFFIN,

        Defendant/Counterplaintiff-Appellant,

and

THUMB RIGGING & ERECTORS, INC., and
INVESTCOR, LLC,

        Third-Party Plaintiffs-Appellants.

UNPUBLISHED
January 19, 2023

No. 358362
St. Clair Circuit Court
LC No. 20-002109-CH

Before: CAVANAGH, P.J., and O'BRIEN and RICK, JJ.

PER CURIAM.

In this dispute involving redemption of real property following foreclosure by advertisement, defendant/counterplaintiff, Daniel Griffin, and third-party plaintiffs, Thumb Rigging & Erectors, Inc., and Investcor, LLC (collectively, appellants), appeal by leave granted[1] a judgment quieting title to the subject property in favor of plaintiff/counterdefendant/third-party defendant, Jeffrey Miller (plaintiff). We affirm.

## I. BACKGROUND

This dispute concerns real property in Capac, Michigan, that was owned by Thumb Rigging. Thumb Rigging's mortgagee foreclosed on the mortgage, leading to a sheriff's sale on

---

[1] *Miller v Griffin*, unpublished order of the Court of Appeals, entered January 26, 2022 (Docket No. 358362).

-1-

March 12, 2020. Plaintiff purchased the property at the sale for $63,000. The sheriff's deed, accompanied by an affidavit of purchaser, was not recorded until May 11, 2020. The affidavit misstated the redemption deadline, but correctly indicated that the redemption amount was $63,000, "plus interest at a per diem rate of Thirteen and 24/100 Dollars ($13.24) from the date of sale to the date of redemption, plus any additional amounts that may be added pursuant to MCLA section 600.3240(4)." In the affidavit, plaintiff designated his attorney, Timothy S. Ferrand, as the person "responsible to assist an appropriate person redeeming the Property in computing the exact amount required to redeem the Property and to receive redemption funds." The true deadline for redemption was November 12, 2020.

At the time of the sheriff's sale, Thumb Rigging had at least $500,000 in equity in the property. Thumb Rigging's owner, John Rusztowicz, planned to sell the property and use the sale proceeds to redeem in order to capture the equity, but he did not pursue that option after plaintiff purportedly offered to pay Thumb Rigging for its equity. After realizing that plaintiff would not follow through on this offer, Rusztowicz made an agreement with Griffin whereby Griffin's company, Investcor, would fund the redemption and share in the equity when the property was later sold to a third party. As part of the agreement, Rusztowicz executed a quitclaim deed in favor of Investcor, and Griffin recorded a claim of interest on November 12, 2020, stating that Rusztowicz, on behalf of Thumb Rigging, "may have signed all interest [in the property] to a third party prior to the end of redemption . . . ."

The parties agree that Griffin met with plaintiff on November 11, 2020, to redeem the property, but the details of what occurred during that meeting are disputed. According to plaintiff, Griffin arrived at plaintiff's office unannounced with a cashier's check in the amount of $63,231.76 and $200 in cash. Plaintiff alleges that he told Griffin the payment was insufficient to redeem the property, but Griffin refused to take the funds back.

Griffin's account of the meeting was vastly different. Griffin indicated that he advised plaintiff that Investcor was redeeming the property "on behalf of the property owner," and that he acquired a quitclaim deed to the property for that purpose. Plaintiff repeatedly claimed that he paid $69,000 for the property and "grew quite angry" that Griffin wanted to redeem. Griffin asked plaintiff if the amount tendered was correct and requested verification of the amount by November 12, 2020, i.e., the last day of the redemption period. Griffin asserted that he had an additional $10,000 in cash on hand to cover any deficiency if the tendered payment was insufficient, but he did not receive a response from plaintiff. Instead, plaintiff accepted the redemption funds without indicating that the amount was insufficient. Griffin further alleged that as he was driving home he received a phone call from plaintiff. Plaintiff offered Griffin $50,000 to refrain from redeeming the property on behalf of Thumb Rigging. Griffin declined the offer.

On November 13, 2020, attorney Ferrand sent Griffin a letter explaining that Griffin's redemption attempt was "legally improper" for several reasons, including that the funds he tendered were insufficient to cover the amount paid at sheriff's sale plus interest and costs. Griffin received Ferrand's letter at 4:45 p.m. on Friday, November 13, 2020. Griffin paid "the additional funds claimed due" the next business day, Monday, November 16, 2020.

On December 3, 2020, plaintiff initiated this action against Griffin to quiet title. Plaintiff also asserted a slander-of-title claim arising from Griffin's recorded claim of interest, but that count

-2-

is not at issue in this appeal. Appellants filed a counterclaim and third-party complaint against plaintiff in which they sought a declaratory judgment establishing that the property was properly redeemed, asserted a claim of fraudulent inducement and silent misrepresentation, and requested equitable redemption in the event the court determined that a "strict and technical redemption" did not occur.

Plaintiff moved for partial summary disposition of his quiet-title count under MCR 2.116(C)(8), (9), and (10), and asserted that summary disposition of his quiet-title action in his favor would also resolve appellants' counterclaims and third-party claims. The trial court granted plaintiff's motion. It held that Griffin and Investcor lacked standing to redeem the property. The court further found that Griffin failed to timely pay the full redemption amount, that appellants' pleadings and supporting affidavits failed to establish facts proving fraud, and that the error in the redemption payment was caused by a unilateral miscalculation by Griffin's employee. Finally, the court concluded that the mere fact that plaintiff acquired the property at a "bargain basement" price was not a sufficient basis for invoking equity to override the provisions of controlling statutes. In light of its grant of summary disposition, the trial court entered a judgment quieting title to the property in plaintiff's favor.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition, as well as a trial court's equitable rulings on actions to quiet title. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The standard of review for dispositive motions brought under MCR 2.116(C)(10) is well settled:

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 284; 933 NW2d 732 (2019), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

"A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## III. STATUTORY REDEMPTION—STANDING TO REDEEM

Appellants argue that the trial court erred by determining that Griffin and Investcor lacked standing to redeem. We agree, but conclude that the error was harmless.

-3-

The person who purchases a property at a sheriff's sale upon foreclosure by advertisement acquires an equitable interest in the property, subject to statutory redemption rights held by others. *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138-139; 863 NW2d 344 (2014). If redemption does not occur within the statutory time frame, the purchaser's equitable interest becomes legal title by operation of law. *Id*. Conversely, the sheriff's sale deed becomes void "if the mortgagor, the mortgagor's heirs or personal representative, or any person that has a recorded interest in the property lawfully claiming under the mortgagor . . . redeems the entire premises sold" by paying the full redemption amount within the statutory time period. MCL 600.3240(1).

The trial court concluded that neither Griffin nor Investcor could redeem the property because neither had a valid recorded interest in the property as required by MCL 600.3240(1). Appellants do not seem to dispute this conclusion on appeal and, instead, argue that the trial court erred by failing to consider that appellants intended Griffin's redemption efforts to be carried out on behalf of Thumb Rigging. We agree.

Thumb Rigging was the mortgagor and had a clear right of redemption under MCL 600.3240(1). But as a corporation, Thumb Rigging is an artificial entity that exists only in the eyes of the law. *Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015). Because a corporation cannot make its own decisions or physically act on such decisions, it acts through its officers and agents. *Altobelli v Hartmann*, 499 Mich 284, 296-297; 884 NW2d 537 (2016). "An agent is an individual who has express or implied authority to represent or act on behalf of another person known as the principal." *Mich Open Carry, Inc v Mich State Police*, 330 Mich App 614, 623; 950 NW2d 484 (2019). The trial court was presented with sworn statements from Rusztowicz and Griffin averring that the redemption payment was tendered on behalf of Thumb Rigging. Viewing the affidavits in the light most favorable to appellants, there was, at minimum, sufficient evidence to create a question of fact as to whether redemption was pursued by Thumb Rigging, a proper redeeming party under MCL 600.3240(1).

However, the trial court's error regarding this issue was harmless. In order to void a sheriff's sale deed, redemption must be made not only by a proper party, but also in "the amount required under [MCL 600.3240(2)] and any amount required under [MCL 600.3240(4)], within the applicable time limit . . . ." MCL 600.3240(1). The redemption period expired on November 12, 2020. It is undisputed that the funds Griffin tendered to plaintiff on November 11, 2020, did not satisfy the full redemption amount. Although the unpaid balance was tendered a few days later, the statutory redemption period had already expired by that time. Because the required amount was not paid within the redemption period, the trial court's ultimate conclusion that appellants failed to properly redeem the property in compliance with MCL 600.3240 was not erroneous.

## IV. EQUITABLE REDEMPTION

Appellants challenge the trial court's denial of equitable redemption for several reasons. We are not persuaded that the trial court erred by rejecting appellants' equitable claims.

As an initial matter, we note that the trial court granted summary disposition with respect to appellants' claims of fraud and request for equitable redemption under MCR 2.116(C)(8) and

-4-

(9), which test the legal sufficiency of a claim or defense, respectively. See *El-Khalil*, 504 Mich at 159 ("A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint."); *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425-426; 648 NW2d 205 (2002) ("Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery."). Both subrules require the trial court to decide the motion on the pleadings alone. *El-Khalil*, 504 Mich at 160; *Slater*, 250 Mich App at 425; MCR 2.116(G)(5). Here, however, the trial court considered the pleadings, the affidavits attached to the pleadings, *and* the affidavits submitted with the parties' summary disposition briefing. Because the parties and trial court relied on evidence outside the pleadings, we will review this issue under MCR 2.116(C)(10). *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017).

When a mortgagee forecloses by advertisement, "the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption" are governed by statute. *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 50; 503 NW2d 639 (1993). Statutory redemption is a legal right that "can neither be enlarged nor abridged by the courts." *Gordon Grossman Bldg Co v Elliott*, 382 Mich 596, 603; 171 NW2d 441 (1969).[2] Thus, "[a]bsent some unusual circumstances or additional considerations not within the ambit of the statute," courts must enforce the clear requirements of the statute. *Id*. "Any departure from this general rule must be addressed to the conscience of the court," and the most common ground for a court's equitable intervention is in cases of fraud, supported by clear and convincing proofs. *Id*. at 603-604. That said, equitable factors alone are not enough to justify deviation from the statutory redemption requirements. *Senters*, 443 Mich at 50-51. As stated by the Supreme Court, MCL 600.3240 "specifies the requirements for redemption, leaving no room for equitable considerations absent fraud, accident, or mistake." *Id*. at 55.

After concluding that Griffin and Investcor lacked standing to redeem and failed to timely pay the full redemption amount, the court indicated that it had "no authority to extend the redemption period for the subject property [or] authority to declare that the property was legally redeemed." Appellants cite this statement as evidence that the trial court failed to recognize that it had equitable powers in this case. Appellants' position is belied by the very next paragraph of the trial court's opinion, wherein the court recognized that an exception to the general rule exists in cases of clearly established fraud. Read as a whole, it is apparent that the trial court granted summary disposition not because it misunderstood the extent of its authority, but because it found appellants' reasons for invoking equity inadequate.

---

[2] *Gordon Grossman Bldg Co* involved redemption of a land contract, but the Court observed that the relevant statute eliminated most of the legal distinctions between foreclose of a mortgage and foreclosure of a land contract, and the authorities cited by the Court were equally applicable in both contexts. *Gordon Grossman Bldg Co*, 382 Mich at 602 n 1.

Appellants' counterclaim and third-party complaint implicated two types of fraud—traditional common-law fraud and silent fraud.[3]  See *M&D, Inc v WB McConkey*, 231 Mich App 22, 26-27; 585 NW2d 33 (1998) (noting alternative theories for establishing fraud).  Common-law fraud consists of six elements:

> (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation.  *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 408; 751 NW2d 443 (2008).  [*Lucas v Awaad*, 299 Mich App 345, 363; 830 NW2d 141 (2013).]

Silent fraud requires evidence "that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure."  *Id*. at 363-364.  "A plaintiff cannot merely prove that the defendant failed to disclose something; instead, 'a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive.' "  *Id*. at 364, quoting *Roberts v Saffell*, 280 Mich App 397, 404; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009).

## A.  PAYMENT FOR THUMB RIGGING'S EQUITY

In their counterclaim and third-party complaint, appellants alleged that plaintiff "repeatedly promised that instead of a redemption, Plaintiff would make a payment to Thumb Rigging for its equity in the property and, thereby allow [plaintiff] to acquire ownership in the property."  The trial court reasoned that this representation did not constitute fraud because, elsewhere in their pleading, appellants acknowledged that "it became evident [plaintiff] would not make the promised payment . . . ."  Although it is unclear when Thumb Rigging determined that plaintiff would not honor his verbal promise, Rusztowicz asserted that he did not have enough time to complete the redemption by way of a sale to a third party.  Yet by his own sworn statement, Rusztowicz had enough time to make alternative arrangements with Griffin and attempt to carry out those plans before the redemption period expired.  The redemption was unsuccessful because the payment tendered was insufficient, which cannot be attributed to plaintiff's initial promise to pay Thumb Rigging for its equity.  In other words, appellants could not establish that Thumb Rigging was injured as a result of having relied on plaintiff's initial representation, and the trial

---

[3] Appellants at least arguably pleaded three acts of fraud: (1) plaintiff's promise to pay for Thumb Rigging's equity; (2) plaintiff's misrepresentation of the price paid at the sheriff's sale; and (3) plaintiff's failure to timely disclose that the first redemption payment was insufficient.  But in their response to plaintiff's dispositive motion, appellants argued that they presented "two claims of fraud" and offered arguments regarding the first and third theories only.  Although the trial court addressed the second theory in its opinion and order, appellants continue to focus only on the first and third theories on appeal.

court did not err by concluding that plaintiff was entitled to judgment as a matter of law with respect to this allegation of fraud.

Appellants also take issue with the trial court's dismissal of their claim regarding plaintiff's initial offer for want of a valid contract. They argue that the trial court erred in this regard because *Gordon Grossman Bldg Co* held that equitable extension of the redemption period can be granted on the basis of fraud *or* dilatory tactics used to induce the mortgagor to refrain from redemption, and the latter theory does not require the heightened pleading requirements applicable to fraud. Appellants' argument is fatally flawed from the outset, as *Gordon Grossman Bldg Co* did not place significance on "dilatory tactics" as appellants contend. Indeed, the Supreme Court mentioned dilatory tactics only once, in the context of describing precedent concluding that the plaintiff's allegations of fraud and dilatory tactics did *not* warrant equitable relief where the plaintiff did not clearly prove fraud. *Gordon Grossman Bldg Co*, 382 Mich at 604-605, citing *Palmer v Palmer*, 194 Mich 79; 160 NW 404 (1916).

Moreover, we disagree with appellants' interpretation of the trial court's ruling on this point. At the end of its analysis regarding fraud, the trial court opined:

> At best, the Affidavits and pleadings filed by Griffin and Third-Party Plaintiffs demonstrate that Thumb Rigging and Plaintiff were involved in negotiations for Plaintiff's purchase of Thumb Rigging's equity in the property and that those negotiations fell through. No definite agreement was ever reached. Their failure to reach agreement does not demonstrate fraud and provides no basis for the Court to set aside Plaintiff's purchase of the property or to extend the redemption period.

We read the above passage as reiterating that appellants' fraudulent-inducement theory, both as pleaded and supported by affidavits, did not demonstrate fraud. Instead, the court viewed any representations plaintiff may have made regarding payment for Thumb Rigging's equity as part of negotiations that were ultimately unsuccessful—the very situation that the *Gordon Grossman Bldg Co* Court concluded did not "amount to an act of fraud which would justify the intervention of equity." *Gordon Grossman Bldg Co*, 382 Mich at 605. Appellants presented this theory as a claim of fraudulent inducement, and the trial court did not err by granting summary disposition of this issue because the undisputed facts demonstrated that appellants did not suffer injury as a result of relying on plaintiff's misrepresentation. *Lucas*, 299 Mich App at 363.

## B. SILENCE REGARDING SUFFICIENCY OF REDEMPTION PAYMENT

Appellants' other claim regarding plaintiff's misrepresentations sounded in silent fraud. Appellants alleged that plaintiff accepted Griffin's tender without objection as to the amount, and that plaintiff's silence was misleading and relied on by Griffin, who could have immediately cured the deficiency had it been known. The trial court rejected this silent-fraud theory because appellants conceded that the redemption payment was calculated by Griffin's employee and was, therefore, a unilateral mistake.

Relying on *Hord v Environmental Research Institute of Mich (After Remand)*, 463 Mich 399; 617 NW2d 543 (2000), and *M&D*, 231 Mich App 22, appellants assert that a duty to disclose

can arise when a party has expressed to another a particularized concern or made a direct inquiry.[4] They argue that plaintiff had a duty to disclose that the November 11, 2020 payment was insufficient because Griffin specifically asked for assurances that the necessary amount was tendered. Appellants' position rests on an overly broad and inaccurate view of these cases as neither case suggests that a mere inquiry by one party to another imposes an affirmative duty of disclosure on the latter. In *Hord*, 463 Mich at 412, the Supreme Court explained that "a legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, *to which the defendant makes incomplete replies that are truthful in themselves but omit material information.*" (Emphasis added.) This Court acknowledged the rule similarly in *M&D*, 231 Mich App at 29, noting:

> Our Supreme Court has recognized a vendor's duty to disclose material facts when the vendor and purchaser have generally discussed the condition at issue—when the purchaser has expressed some particularized concern or made a direct inquiry—and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition and the buyer detrimentally relies upon the resulting *misdirection*. A vendor also has a duty to disclose " 'substantially acquired information which he recognizes as rendering untrue, or misleading, previous *representations* which, when made, were true or believed to be true.' " [Citations omitted.]

It is evident from both of these cases that a duty of disclosure is not triggered by a mere inquiry from one party—the other party must have made some sort of misleading representation regarding the matter that requires correction. See also *Lucas*, 299 Mich App at 364 (noting that "a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive.") (quotation marks and citation omitted).

Here, the counterclaim and third-party complaint alleged that Griffin asked plaintiff if the November 11, 2020 payment was sufficient, but plaintiff accepted the funds without objection, failing to acknowledge the deficiency until after the redemption period expired. Griffin likewise averred that he asked plaintiff if the redemption payment was correct and requested verification by November 12, 2020, yet received no response to either request. Plaintiff's silence in these circumstances would not give rise to a duty of disclosure because nothing about plaintiff's interactions with Griffin misled Griffin regarding the sufficiency of the payment. In fact, the only representation plaintiff made regarding the amount required for redemption was in the affidavit of purchaser recorded with the sheriff's deed, and the parties do not dispute that the affidavit contained the information required to accurately calculate the redemption amount. "There can be

---

[4] Appellants also cite *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 107; 878 NW2d 816 (2016), which cited *M&D* for the proposition that a duty of disclosure "may arise when a party has expressed to another some particularized concern or made a direct inquiry." (Quotation marks and citations omitted.) But the question of a particularized concern or direct inquiry was not at issue in *Bank of America*, making this point nonbinding dictum. See *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) (defining dictum and acknowledging that it is nonbinding).

no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994).

Appellants argue that plaintiff's subsequent offer of $50,000 to Griffin to forgo redemption, coupled with plaintiff's previous silence, gave the false impression that the redemption funds were sufficient and triggered plaintiff's duty of disclosure. We disagree. Appellants have not pointed to any evidence that plaintiff made any representations regarding the redemption payment during his second conversation with Griffin. Even viewing the evidence in the light most favorable to appellants, plaintiff's offer undercuts appellants' silent-fraud theory by suggesting that plaintiff, too, may have believed the payment was sufficient. If plaintiff had recognized that the payment was insufficient, there would have been no reason for him to make such an offer—he only needed to sit back, remain silent, and allow the redemption period to expire at the end of the next day. To the extent plaintiff was unaware that the tendered funds were insufficient, he could not be obligated to disclose facts that were unknown to him. Because appellants' allegations and proofs did not present a viable silent-fraud claim, the trial court did not err by granting summary disposition of that claim.

We note, however, that the trial court's ruling regarding appellants' silent-fraud theory was premised more on the law of mistake than silent fraud. Appellants therefore argue that equitable relief was appropriate because the Supreme Court held in *Senters*, 443 Mich at 55, that the redemption statute left "no room for equitable considerations *absent* fraud, accident, or *mistake*." (Emphasis added.) Appellants argue that because *Senters* did not distinguish between unilateral and mutual mistakes, the trial court erred by concluding that appellants' unilateral mistake regarding the redemption amount precluded equitable relief. We disagree.

The statutory foreclosure-by-advertisement process and associated redemption rights were designed to provide finality in foreclosures; deviations from the statutory requirements should not be permitted except in the most compelling circumstances. See, e.g., *Gordon Grossman Bldg Co*, 382 Mich at 605-606 (noting that extending the redemption period on the basis of failed redemption negotiations would set a dangerous precedent depriving "title to real estate purchased at foreclosure sale of the finality and security clearly intended under the statute"). If a unilateral mistake was sufficient, the proverbial floodgates would open to redemption challenges, thereby undermining the intent of the statutory scheme. Moreover, this Court has previously held that equitable extension of the statutory redemption period is not permitted on the basis of a mistake. *Schulthies v Barron*, 16 Mich App 246, 248; 167 NW2d 784 (1969).[5] *Schulthies* involved a mortgagor's mistaken belief regarding the length of the redemption period, *id*. at 247, suggesting that a unilateral mistake will not suffice. Appellants' position is also at odds with other caselaw discussing when a court can overlook statutory requirements in the interest of equity. See, e.g., *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005) ("Although courts undoubtedly possess equitable powers, such powers have traditionally been reserved for 'unusual

---

[5] Decisions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are still regarded as precedent and entitled to deference if not disputed by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

circumstances' such as fraud or mutual mistake.") (citations omitted); *Solo v Chrysler Corp (On Rehearing)*, 408 Mich 345, 350-352; 292 NW2d 438 (1980) (reasoning that while the statute required fraud to impeach factual finding, it did not speak to referee's approval of a redemption agreement, which could be set aside in equity on the basis of a mutual mistake of fact); *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336; 820 NW2d 242 (2012) (where statute required taxation upon recording of a written instrument conveying property, the petitioner was not entitled to equitable reformation of quitclaim deed to equitable mortgage on the basis of the petitioner's mistaken belief that quitclaims deeds were not taxable).

Moreover, the particular circumstances with respect to the mistake at issue in this case would not warrant equitable relief in any event. Appellants acknowledge that the November 11, 2020 redemption payment was erroneously calculated by Griffin's employee. While there is evidence from which a fact-finder could determine that plaintiff shared appellants' mistaken belief regarding the sufficiency of the payment, a court can only overlook the requirements of a statute in the interest of equity for "unusual circumstances or additional considerations *not within the ambit of the statute . . . .*" *Gordon Grossman Bldg Co*, 382 Mich at 603 (emphasis added).

In defining the amount required to redeem following a sheriff's sale, the Legislature mandated the filing of an affidavit from the purchaser to assist in such calculations. In pertinent part, MCL 600.3240(2) states:

> The purchaser shall provide an affidavit with the deed to be recorded under this section that states the exact amount required to redeem the property under this subsection, including any daily per diem amounts, and the date by which the property must be redeemed shall be stated on the certificate of sale. *The purchaser may include in the affidavit the name of a designee responsible on behalf of the purchaser to assist the person redeeming the property in computing the exact amount required to redeem the property.* The designee may charge a fee of not more than $250.00 as stated in the affidavit and may be authorized by the purchaser to receive redemption money. The purchaser shall accept the amount computed by the designee. [Emphasis added.]

The emphasized language clearly contemplates that a purchaser might choose to exclude himself or herself from the process of calculating the redemption amount and establishes a mechanism for doing so. The purchaser's affidavit recorded by plaintiff identified his attorney as his designee, effectively terminating plaintiff's responsibility with respect to such calculation. Under these circumstances, plaintiff's own mistake regarding the necessary redemption amount would be irrelevant. To the extent Griffin and plaintiff were mutually mistaken about the sufficiency of the November 11, 2020 payment, it would not support equitable relief in this instance because this type of mistake fell within the ambit of the statute after plaintiff exercised his right to name a designee responsible for assisting in calculating the correct redemption amount. Thus, whether construed as a unilateral or mutual mistake, equitable relief was not warranted.

-10-

## V. QUESTIONS OF FACT

Appellants also argue that the trial court erred by granting summary disposition, especially before discovery began, because the conflicting affidavits created questions of fact regarding several key issues. We disagree.

Because MCR 2.116(C)(10) tests the factual support for a claim, a motion under that subrule may be premature before the completion of discovery. *Colista v Thomas*, 241 Mich App 529, 537; 616 NW2d 249 (2000). But to avoid summary disposition on the basis of incomplete discovery, the nonmoving party must "clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020). "The dispositive inquiry is whether further discovery presents a fair likelihood of uncovering factual support for the party's position." *Id*. (quotation marks and citation omitted).

Appellants argue that summary disposition was inappropriate because the conflicting affidavits created questions of fact regarding (1) whether plaintiff promised Rusztowicz payment for Thumb Rigging's equity; (2) whether Griffin asked plaintiff about the sufficiency of the first redemption payment and how plaintiff responded to that inquiry; (3) whether plaintiff offered Griffin $50,000 to not redeem the property; and (4) whether the redemption funds were tendered on behalf of Thumb Rigging. We agree that the pleadings and limited evidence offered in support of and in opposition to plaintiff's dispositive motion reflected questions of fact regarding these issues. Even so, these fact questions did not preclude summary disposition because other undisputed facts established that plaintiff was entitled to summary disposition of the counterclaims and third-party claims as a matter of law.

As described in Parts III and IV, appellants' declaratory judgment count lacked factual merit because it is undisputed that the entire redemption amount was not paid before the redemption period expired. Appellants' fraudulent-inducement claim lacked factual merit because appellants were not harmed as a result of relying on plaintiff's representation that he would pay Thumb Rigging for its equity. Appellants' silent-fraud claim lacked factual merit because, assuming plaintiff knew the initial redemption payment was insufficient, he did not have a duty to disclose the deficiency. Appellants' claim for equitable redemption also lacked merit because the mistaken redemption amount was miscalculated by Griffin's employee, and any shared belief plaintiff may have held regarding the sufficiency of the payment could not support a claim for equitable relief in light of his decision to name a designee responsible for assisting in such calculations.

Furthermore, because the fact questions identified by appellants could not lead to a viable claim for redemption, whether statutory or equitable, the trial court did not err by granting summary disposition of plaintiff's quiet-title count in plaintiff's favor. MCL 600.2932(1) provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit court against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff . . . ." The plaintiff in a quiet-title action bears the burden of establishing "a prima facie case of title." *Special Prop VI LLC v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). The burden then shifts to the defendant to prove a superior right or title to the property. *Beulah Hoagland Appleton*

*Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

The purchaser of a property at a properly conducted foreclosure sale "becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law." *Trademark Props of Mich*, 308 Mich App at 138-139. "If a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). Plaintiff presented evidence that he purchased the property at sheriff's sale on March 12, 2020. Plaintiff did not file the sheriff's deed with the register of deeds within the 20-day period contemplated by MCL 600.3232. Instead, the recording occurred on May 11, 2020. Because of the late filing, the six-month redemption period provided by MCL 600.3240(7) did not begin to run until May 11, 2020. *Mills v Jirasek*, 267 Mich 609, 613; 255 NW 402 (1934). The redemption period therefore expired on November 12, 2020.[6] Appellants did not fully redeem the property before that time, so plaintiff's equitable title became legal title by operation of law. *Trademark Props of Mich*, 308 Mich App at 138-139. Appellants did not present any viable defenses or offer evidence establishing superior title. As such, the trial court did not err by granting summary disposition of plaintiff's quiet-title count in plaintiff's favor.

Affirmed. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ Michelle M. Rick

---

[6] In computing a period of time prescribed by statute, "[i]f the period is measured by months or years, the last day of the period is the same day of the month as the day on which the period began." MCR 1.108(3). The six-month redemption period would ordinarily have expired on November 11, 2020—a legal holiday (Veterans Day). Under MCR 1.108(1), when the last day of a period is a legal holiday, "the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order."